1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hon. Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| CINDY CODONI, MICHELLE GEER, HORACE CATHCART, AMY FRANCE, and TAMARA CHAKOS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>PORT OF SEATTLE, ALASKA AIR GROUP, and DELTA AIR LINES, INC.,<br><br>    Defendants. | Case No. 2:23-cv-00795<br><br>**ALASKA AIR GROUP AND DELTA AIR LINES, INC.'S JOINT MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: November 24, 2023 per LCR 7, but to be set per Dkt. 45**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF THE CASE.................................................................................2

    I.    The Federal Government's Pervasive Regulation Of Aircraft Operations And Emissions. .........................................................................................................2

    II.    Factual And Procedural Background ..................................................................8

ARGUMENT ..........................................................................................................9

    I.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Collateral Attacks On FAA And EPA Orders. ....................................................................9

    II.    Federal Law Preempts Plaintiffs' Claims. ......................................................13

        A.    Federal Law Expressly Preempts Plaintiffs' Claims.     15

            1.    The Airline Deregulation Act Preempts Plaintiffs' Claims. .....15

            2.    The Clean Air Act Preempts Plaintiffs' Claims........................17

        B.    Plaintiffs' Claims Are Foreclosed By Field Preemption.     20

            1.    The Federal Government Occupies The Field For The Flight Operations At Issue In This Case................................................20

            2.    Plaintiffs' Claims Impermissibly Intrude Into The Field Of Flight Operations........................................................................24

        C.    Plaintiffs' Claims Are Barred By Conflict Preemption.     26

            1.    Plaintiffs' Claims Would Make It Impossible For The Airlines To Comply With FAA Flight Path Directives. .........................26

            2.    Plaintiffs' Claims Stand As An Obstacle To Federal Emissions Laws. .......................................................................................27

CONCLUSION......................................................................................................28

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

i

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdullah v. Am. Airlines, Inc.*,
    181 F.3d 363 (3d Cir. 1999)...........................................................................................23

*Americopters, LLC v. FAA*,
    441 F.3d 726 (9th Cir. 2006)........................................................................................10

*Arizona v. United States*,
    567 U.S. 387 (2012) ...............................................................................................20, 26

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) .....................................................................................................27

*Bodi v. Shingle Springs Band of Miwok Indians*,
    832 F.3d 1011 (9th Cir. 2016)......................................................................................11

*Bryski v. City of Chicago*,
    499 N.E.2d 162 (Ill. Ct. App. 1986) ............................................................................23

*Cal. Dump Truck Owners Ass'n v. Nichols*,
    784 F.3d 500 (9th Cir. 2015)........................................................................................13

*California Rest. Ass'n v. City of Berkeley*,
    65 F.4th 1045 (9th Cir. 2023)......................................................................................18

*California v. Dep't of Navy*,
    431 F. Supp. 1271 (N.D. Cal. 1977) ............................................................................19

*California v. Dep't of Navy*,
    624 F.2d 885 (9th Cir. 1980)........................................................................................19

*Chamber of Commerce of U.S. v. Whiting*,
    563 U.S. 582 (2011) ...............................................................................................26, 28

*Charas v. Trans World Airlines, Inc.*,
    160 F.3d 1259 (9th Cir. 1998)................................................................................16, 17

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992) ...............................................................................................14, 17

*City of Burbank v. Lockheed Air Terminal, Inc.*,
    411 U.S. 624 (1973) .........................................................................................21, 22, 23

*City of New York v. FCC*,
    486 U.S. 57 (1988) .................................................................................................26, 27

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

ii

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

*Cohen v. Apple Inc.*,
    46 F.4th 1012 (9th Cir. 2022)........................................................................27, 28

*N. Carolina ex rel. Cooper v. Tenn. Valley Auth.*,
    615 F.3d 291 (4th Cir. 2010)...................................................................................11

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014)....................................................................................................14

*Dilts v. Penske Logistics, LLC*,
    769 F.3d 637 (9th Cir. 2014)...................................................................................16

*French v. Pan Am Exp., Inc.*,
    869 F.2d 1 (1st Cir. 1989) ................................................................................21, 23

*Gilmore v. Gonzales*,
    435 F.3d 1125 (9th Cir. 2006).................................................................................10

*Green v. Brantley*,
    981 F.2d 514 (11th Cir. 1993).................................................................................10

*Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*,
    555 F.3d 806 (9th Cir. 2009).............................................................................21, 22

*Krauss v. FAA*,
    2016 WL 1162028 (N.D. Cal. Mar. 24, 2016) ..................................................10, 11

*Kurns v. R.R. Friction Prods. Corp.*,
    565 U.S. 625 (2012)................................................................................................15

*Lamar, Archer & Cofrin, LLP v. Appling*,
    138 S. Ct. 1752 (2018) ............................................................................................18

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001).....................................................................................3

*Mace v. Skinner*,
    34 F.3d 854 (9th Cir. 1994).....................................................................................10

*McDaniel v. Wells Fargo Investments, LLC*,
    717 F.3d 668 (9th Cir. 2013)...................................................................................15

*McKay v. City & Cnty. of S.F.*,
    2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) ....................................10, 11, 12, 13

*Miller v. C.H. Robinson Worldwide, Inc.*,
    976 F.3d 1016 (9th Cir. 2020).................................................................................15

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

iii

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

*Montalvo v. Spirit Airlines*,
    508 F.3d 464 (9th Cir. 2007)....................................................14, 20, 21, 22, 23

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ...........................................................................15, 17, 18

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    138 S. Ct. 1461 (2018) .................................................................................15

*Mut. Pharm. Co. v. Bartlett*,
    570 U.S. 472 (2013)...........................................................................14, 26, 27

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
    813 F.3d 718 (9th Cir. 2016)....................................................13, 15, 20, 21, 25

*Nat'l Helicopter Corp. of Am. v. City of New York*,
    137 F.3d 81 (2d Cir. 1998) .........................................................................22

*New England Legal Found. v. Costle*,
    666 F.2d 30 (2d Cir. 1981) ..........................................................................13

*Northwest Airlines, Inc. v. Minnesota*,
    322 U.S. 292 (1944) ...................................................................................1

*Northwest, Inc. v. Ginsberg*,
    572 U.S. 273 (2014).............................................................................14, 15, 16, 17

*Patel v. Garland*,
    596 U.S. 328 (2022) ..................................................................................18

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ..................................................................................26

*Puerto Rico v. Franklin California Tax-Free Tr.*,
    579 U.S. 115 (2016) ..................................................................................14

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) ..................................................................................14

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008).............................................................................16, 17

*Ryan v. Lopez*,
    2014 WL 2201076 (D. Or. May 23, 2014) ...................................................3

*San Diego Bldg. Trades Council v. Garmon*,
    359 U.S. 236 (1959) ..................................................................................15

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

iv

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

*San Diego Unified Port Dist. v. Gianturco,*
   651 F.2d 1306 (9th Cir. 1981) ............................................................22, 23

*Skysign Int'l, Inc. v. City & Cnty. of Honolulu,*
   276 F.3d 1109 (9th Cir. 2002) .....................................................................22

*Tur v. FAA,*
   104 F.3d 290 (9th Cir. 1997) .......................................................................10

*United States v. City of Blue Ash,*
   487 F. Supp. 135 (S.D. Ohio 1978) ............................................................23

*Ventress v. Japan Airlines,*
   603 F.3d 676 (9th Cir. 2010) .......................................................................17

*Ventress v. Japan Airlines,*
   747 F.3d 716 (9th Cir. 2014) ...........................................................22, 23, 25

*Washington v. Gen. Motors Corp.,*
   406 U.S. 109 (1972) ....................................................................................23

**Statutes**

5 U.S.C. § 553 ....................................................................................................13

42 U.S.C. § 4321 *et seq.* ......................................................................................3

42 U.S.C. § 7543 ................................................................................................18

42 U.S.C. § 7571 ...............................................................................2, 7, 18, 27

42 U.S.C. § 7572 ..................................................................................................7

42 U.S.C. § 7573 .............................................................................2, 17, 18, 19, 28

42 U.S.C. § 7602 ................................................................................................18

42 U.S.C. § 7607 ...............................................................................10, 11, 13

49 U.S.C. § 40101 ..............................................................................................27

49 U.S.C. § 40102 ................................................................................................2

49 U.S.C. § 40103 ...............................................................................2, 20, 21, 24

49 U.S.C. § 41713 ..........................................................................................2, 15

49 U.S.C. § 44701 ...............................................................................2, 6, 24, 27

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

v

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

49 U.S.C. § 44702 ..................................................................................25

49 U.S.C. § 44704 ...............................................................................7, 25

49 U.S.C. § 44713 ....................................................................................7

49 U.S.C. § 44714 ...............................................................................6, 25

49 U.S.C. § 44717 ....................................................................................7

49 U.S.C. § 46110 ...................................................................9, 10, 11, 12

**Rules**

Fed. R. Civ. P. 12 ...............................................................................1, 13

Fed. R. Evid. 201 ....................................................................................3

**Regulatory and Administrative Authorities**

14 C.F.R. Part 21 ...............................................................................7, 25

14 C.F.R. Part 23 .....................................................................................6

14 C.F.R. Part 24 .....................................................................................6

14 C.F.R. Part 25 ...........................................................................6, 7, 25

14 C.F.R. Part 26 .....................................................................................6

14 C.F.R. Part 33 .....................................................................................6

14 C.F.R. Part 34 .........................................................................6, 7, 8, 12

14 C.F.R. Part 71 .....................................................................................4

14 C.F.R. Part 77 .....................................................................................3

14 C.F.R. Part 91 ...............................................................................4, 5, 6

14 C.F.R. Part 92 .....................................................................................4

14 C.F.R. Part 93 .....................................................................................4

14 C.F.R. Part 94 .....................................................................................4

14 C.F.R. Part 95 .....................................................................................4

14 C.F.R. Part 96 .....................................................................................4

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

vi

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

14 C.F.R. Part 97 ................................................................................................. 4, 5

14 C.F.R. Part 121 ..................................................................................... 3, 4, 5, 6, 7

14 C.F.R. Part 125 ....................................................................................................... 7

14 C.F.R. Part 139 ....................................................................................................... 3

14 C.F.R. Part 150 ....................................................................................................... 3

14 C.F.R. Part 151 ....................................................................................................... 3

14 C.F.R. Part 152 ....................................................................................................... 3

14 C.F.R. Part 153 ....................................................................................................... 3

14 C.F.R. Part 154 ....................................................................................................... 3

14 C.F.R. Part 155 ....................................................................................................... 3

14 C.F.R. Part 156 ....................................................................................................... 3

14 C.F.R. Part 157 ....................................................................................................... 3

14 C.F.R. Part 158 ....................................................................................................... 3

14 C.F.R. Part 159 ....................................................................................................... 3

14 C.F.R. Part 160 ....................................................................................................... 3

14 C.F.R. Part 161 ....................................................................................................... 3

14 C.F.R. Part 162 ....................................................................................................... 3

14 C.F.R. Part 163 ....................................................................................................... 3

14 C.F.R. Part 164 ....................................................................................................... 3

14 C.F.R. Part 165 ....................................................................................................... 3

14 C.F.R. Part 166 ....................................................................................................... 3

14 C.F.R. Part 167 ....................................................................................................... 3

14 C.F.R. Part 168 ....................................................................................................... 3

14 C.F.R. Part 169 ....................................................................................................... 3

40 C.F.R. Part 87 ....................................................................................................... 7

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

vii

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

40 C.F.R. Part 1031 .................................................................................7, 8, 12

40 C.F.R. Part 1500 ...............................................................................................3

40 C.F.R. Part 1501 ...............................................................................................3

40 C.F.R. Part 1502 ...............................................................................................3

40 C.F.R. Part 1503 ...............................................................................................3

40 C.F.R. Part 1504 ...............................................................................................3

40 C.F.R. Part 1505 ...............................................................................................3

40 C.F.R. Part 1506 ...............................................................................................3

40 C.F.R. Part 1507 ...............................................................................................3

40 C.F.R. Part 1508 ...............................................................................................3

Control of Air Pollution From Aircraft Engines: Emissions Standards and Test
 Procedures, 87 Fed. Reg. 72,312 (Nov. 23, 2022) .............................8, 13, 19, 28

FAA, Advisory Circular 34-1B (June 27, 2003) ..............................................28

FAA, Documented CatEx, Sea-Tac International Arrivals Facility (April 22,
 2015) ....................................................................................................................4

FAA, Finding of No Significant Impact (FONSI) & Record of Decision (ROD)
 for the Implementation of RNAV/RNP Procedures at Seattle-Tacoma
 International Airport (Oct. 31, 2012) ............................................................5, 12

FAA, Order 1050.1F (July 16, 2015) ..................................................................3

FAA, Order 8130.2J (July 21, 2017) ...................................................................7

FAA, Order JO 7110.65AA (April 20, 2023) .................................................5, 12

FAA, Terminal Procedures Publication, Northwest (October 5, 2023) ..................5

FAA, Record of Decision for the Master Plan Update Development Actions
 Sea-Tac International Airport, Seattle Washington (July 3, 1997) .............3, 4, 24

**Other Authorities**

Port of Seattle, Sustainable Airport Master Plan ..............................................13

Sen. Rep. No. 1811, 85th Cong., 2d Sess. (1958) ..................................................1

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

viii

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1

## INTRODUCTION

"Aviation is unique among transportation industries" because "it is the only one whose operations are conducted almost wholly within Federal jurisdiction" and because "the Federal Government bears virtually complete responsibility for [its] promotion and supervision."  Sen. Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958).  Thus, courts have long recognized that "[p]lanes do not wander about in the sky like vagrant clouds.  They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands.  The moment [an aircraft] taxis onto a runway it is caught up in an elaborate and detailed system of [federal] controls."  *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303 (1944) (J. Jackson, concurring).

Plaintiffs' Second Amended Complaint ("SAC") would vitiate this "intensive and exclusive" federal "control" over aviation operations.  *Id.*  Plaintiffs allege that Alaska Air Group[1] and Delta Air Lines (together, "Airlines") are liable in tort for emissions from aircraft flying over their homes, which are located within a five-mile radius of Seattle-Tacoma International Airport ("Sea-Tac").  *See, e.g.*, SAC ¶¶ 3, 14, 26, 50, 58, 61, 64, 66.  But the Federal Aviation Administration ("FAA") and the Environmental Protection Agency ("EPA") pervasively—and exclusively—regulate *every* aspect of the Airlines' supposedly unlawful conduct:  from flight paths and runway locations to the design of aircraft and aircraft engines and corresponding aircraft emissions.  Moreover, Congress has expressly—and broadly— preempted state common-law actions that intrude on the exclusive and unified federal regulatory regime because such efforts would create an impermissible patchwork of conflicting state regulations.  Plaintiffs' complaint should be dismissed with prejudice on multiple grounds.  *See* Fed. R. Civ. P. 12(b)(1), (6).

---

[1] Alaska Air Group, Inc. is a holding company that does not own or operate any aircraft and did not engage in any of the conduct at issue in this suit.  Plaintiffs have thus sued the wrong entity. The proper defendant is Alaska Airlines, Inc., a subsidiary of Alaska Air Group, Inc.

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

1

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

*First*, because the suit is a collateral attack on numerous FAA and EPA orders directing the Airlines' flight paths and authorizing their emissions, which can be challenged only in a Federal Court of Appeals, the case should be dismissed for a lack of subject matter jurisdiction.

*Second*, federal law preempts Plaintiffs' claims under express, field, and conflict preemption: (1) they are expressly preempted under the Airline Deregulation Act, 49 U.S.C. § 41713, because they interfere with the Airlines' "routes" and "services"; (2) they are expressly preempted under the Clean Air Act, 42 U.S.C. § 7573, because they seek to impose emissions standards on the Airlines that differ from federal law; (3) they are barred by field preemption because they impermissibly intrude on the federally-occupied areas of aircraft operations covering airspace management, aviation safety, aircraft design, and aircraft emissions; and (4) they are barred by conflict preemption because (a) the imposition of state tort liability would make it impossible for the Airlines to comply with FAA orders setting their flight paths and (b) the claims stand as an obstacle to federal emissions laws.

STATEMENT OF THE CASE

## I. The Federal Government's Pervasive Regulation Of Aircraft Operations And Emissions.

"The United States Government has ***exclusive*** sovereignty of airspace of the United States," 49 U.S.C. § 40103(a)(1) (emphasis added), including all "airspace needed to ensure safety in the takeoff and landing of aircraft," *id.* § 40102(a)(32). Consistent with that exclusive authority, Congress authorized the FAA to establish regulations governing flight paths "to protec[t] individuals and property ***on the ground***," "ensure the safety of aircraft," and "preven[t] collision." 49 U.S.C. § 40103(b)(1), (2)(B), 2(D) (emphasis added). The FAA must also regulate aircraft design and aircraft engines "in the interest of safety." *Id.* § 44701(a)(1). Similarly, Congress authorized the EPA, in consultation with the FAA, to establish aircraft emissions standards designed to reduce "air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7571(a)(2)(A)-(B).

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

Through thousands of regulations, orders, and other binding directives, the federal government pervasively controls the flight operations implicated by Plaintiffs' claims, including airport location and activity, flight paths, aircraft and aircraft engines, and aircraft emissions, leaving no room for state law.

*Airport Operations*. Before any airplane takes off or lands, the FAA reviews and approves the airport's location, design, and construction. *See* 14 C.F.R. Parts 150-169 (specifications for airport planning and construction); *id.* Part 77 (notification and construction limitations on areas near airports); *id.* § 121.590 (requiring the FAA to certify airports under 14 C.F.R. Part 139 before commercial planes use them). This approval process includes FAA evaluation of the environmental impacts of the use and operation of airports or any modifications thereto. *See* National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-35; 40 C.F.R. Parts 1500-08; FAA, Order 1050.1F § 3-1.2 (July 16, 2015) (implementing statutory mandate for FAA to evaluate environmental impacts before approving the siting of a new commercial airport, new runway, or major runway extension).[2] For example, the FAA analyzes the impact of the airport or runway on the health and safety of the local community on the ground, including the air quality impact of emissions resulting from takeoffs and landings at the airport as well as environmental justice considerations. FAA, Order 1050.1F, § 4-1.

Here, the FAA conducted an environmental review of Sea-Tac's third runway, which Plaintiffs allege resulted in significant new pollution (SAC ¶ 27), before it opened in 2008. *See* FAA, Record of Decision for the Master Plan Update Development Actions Sea-Tac International Airport, Seattle Washington (July 3, 1997) ("Third Runway ROD").[3] The FAA concluded that the air quality impact of the new runway was "*de minimis*" and that its operation

---

[2] https://www.faa.gov/documentLibrary/media/Order/FAA_Order_1050_1F.pdf. For this and other FAA orders cited herein, the "[C]ourt may take judicial notice of 'matters of public record,'" including "agency orders," "without converting a motion to dismiss into a motion for summary judgment." *Ryan v. Lopez*, 2014 WL 2201076, at *2 (D. Or. May 23, 2014) (citation omitted), *aff'd*, 2015 WL 13929019 (9th Cir. July 29, 2015); *see also Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001); Fed. R. Evid. 201.

[3] https://www.faa.gov/sites/faa.gov/files/airports/environmental/environmental_documents/rod_seattle.pdf.

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

3

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

would "conform[] to the … the National Ambient Air Quality Standards." *Id.* at 23. Similarly, the FAA evaluated the environmental impacts of Sea-Tac's International Arrivals Facility and concluded that it would neither increase capacity, nor "result in emissions that would equal or exceed the applicable de minimis threshold rates[,] and therefore, no additional analysis is required." *See* FAA, Documented CatEx, Sea-Tac International Arrivals Facility Att. E at 5 (April 22, 2015).[4]

*Flight Paths*. The FAA dictates the flight paths aircraft must take when flying to or from Sea-Tac. The FAA has issued extensive regulations governing flight paths, including the altitude, direction, and takeoff and landing routes commercial aircraft must use. *See, e.g.*, 14 C.F.R. Part 71 (designating air traffic service routes); 14 C.F.R. Parts 91-97 (providing general air traffic operating rules); *id.* §§ 91.153-183 (providing detailed rules regarding flight path, altitude, and takeoff and landing for various types of flights); 14 C.F.R. §§ 121.91-107, 121.555 (governing routes that commercial air carriers may fly); *id.* § 121.189 (takeoff requirements for air carriers); §§ 121.657-661 (required flight altitudes for air carriers).

Of particular note, the FAA, through regulations and orders, "prescribes standard instrument approach procedures and takeoff minimums and obstacle departure procedures," charts, and flight rules, that provide detailed requirements for all aspects of takeoff and landing. *Id.* § 97.20(a). "No person may make an instrument approach at an airport except in accordance" with these specifications, *id.* § 121.567, and flights that Air Traffic Control authorizes for visual flight operations similarly must follow specific vectors and flight paths, *see* 14 C.F.R. § 91.131(a) (requiring compliance with 14 C.F.R. § 91.129); *id.* § 91.129(e)-(g) (requiring compliance with specified "glide path[s]" and FAA "published" "approach[es]" and "departure procedures"). The FAA publishes "aeronautical charts" with these approach and departure procedures for every regulated airport in the country. *Id.* § 97.20(c). Accordingly,

---

[4] *Published in* App'x 2, Adoption of Existing Environmental Document: Seattle-Tacoma International Airport (STIA): International Arrivals Facility (May 5, 2025), https://www.portseattle.org/sites/default/files/2018-03/IAF_SEPA_Supplemental_Checklist_SIGNED.pdf.

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

4

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

the FAA has set detailed flight paths and procedures with specific rates of ascent and descent at specific altitudes for aircraft flying to or from Sea-Tac. *See id.* §§ 97.20(a), (c); *id.* § 121.567; *see also* FAA, Terminal Procedures Publication, Northwest 722-70 (October 5, 2023) (compiling the procedures and charts for Sea-Tac approaches and departures).[5]  For a standard landing at Sea-Tac, the FAA requires air carriers to approach at a specific, gradual angle of descent that brings airplanes to 1,900 feet of altitude five miles (4.4 NM) from the runway. Terminal Procedures Publication at 722 (bottom left chart); *see id.* at F1 (legend for interpreting glide path charts).  The FAA thus ***requires*** airplanes to fly at an altitude that Plaintiffs allege "magnifie[s]" purported pollution on the ground.  SAC ¶¶ 53-59.

The FAA adopted the current "routes and procedures" for flights in and out of Sea-Tac after carefully analyzing their environmental and safety impacts, including for "persons and property on the ground."  FAA, Finding of No Significant Impact (FONSI) & Record of Decision (ROD) for the Implementation of RNAV/RNP Procedures at Seattle-Tacoma International Airport 1-2 (Oct. 31, 2012) ("Greener Skies FONSI").[6]  In a project named Greener Skies Over Seattle, the FAA implemented new "air traffic routes and instrument procedures" by adopting the "latest navigational technologies" that "allow aircraft operators to fly optimal descent paths, while reducing their environmental impact."  *Id.* at 2-3.  These paths are designed to minimize fuel burn and reduce emissions and strictly constrain airplane flight paths and altitudes within 40 or even 140 miles from Sea-Tac depending on the route.  *Id.* at 3.

The Airlines also must follow directions of air traffic controllers, who are themselves FAA employees, as to which of the FAA-approved routes to take depending on weather patterns and other flight traffic.  14 C.F.R. § 91.123(b).  Air traffic controllers also set altitude levels and speed, have primary responsibility for operations conducted on runways, and direct ground operations as necessary for safety purposes.  *See* FAA, Order JO 7110.65AA (April 20, 2023).[7]

---

[5] https://aeronav.faa.gov/upload_313-d/terminal/2023-10-05/NW1.pdf.

[6] https://www.faa.gov/sites/faa.gov/files/air_traffic/environmental_issues/ared_documentation/ea_SEA_GreenerSkies_Vol1_FONSI_ROD_121030.pdf.

[7] https://www.faa.gov/documentLibrary/media/Order/7110.65AA_ATC_Basic_dtd_4-20-23_FINAL.pdf.

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1  The Airlines must follow these orders because "no person may operate an aircraft contrary to
2  an [Air Traffic Control] instruction in an area in which air traffic control is exercised."  14
3  C.F.R. § 91.123(b).

4     In sum, airlines like Delta and Alaska do not—and cannot—choose the runway, route,
5  or altitudes for landing and takeoff at Sea-Tac; every aspect of the Airlines' flight paths (and
6  the resulting emissions) is dictated by the FAA.

7     ***Aircraft and Aircraft Engines***.  Each commercial airplane must meet highly exacting
8  standards governing "the design, material, construction, quality of work, and performance of
9  aircraft [and] aircraft engines." 49 U.S.C. § 44701(a)(1).  There are thousands of applicable
10  requirements.  *See, e.g.*, 14 C.F.R. Parts 25-26 (airworthiness standards regarding the design,
11  construction, and minimum operational requirements of commercial aircraft); 14 C.F.R.
12  §§ 121.211-359 (additional aircraft safety requirements).  And without a specific exemption
13  from the FAA, aircraft manufacturers and operators may not deviate from these federal
14  standards.

15     The FAA has especially detailed regulations governing the design of nearly every part
16  of aircraft engines and fuel systems. 14 C.F.R. Parts 33-34.  These regulations address, among
17  other things, materials, *id.* § 33.15, engine control systems, *id.* § 33.28, vibration, *id.* §§ 33.33,
18  33.63, fuel and induction systems, *id.* §§ 33.35, 33.67-68, ignition systems, *id.* §§ 33.37, 33.69,
19  and lubrication systems, *id.* § 33.39, 33.71.  The FAA is further charged with regulating "the
20  composition or chemical or physical properties of an aircraft fuel or fuel additive to control or
21  eliminate aircraft emissions" that "endanger the public health or welfare," 49 U.S.C.
22  § 44714(1), and it has issued numerous regulations pertaining to fuel tanks, fuel systems, and
23  fuel supply, *see* 14 C.F.R. §§ 25.951-1001, 121.229-235, 121.639-647.

24     The FAA has issued even more standards governing the airworthiness of aircraft.  *See*
25  *id.* §§ 23.1457-26.49.  For transport category airplanes (*i.e.*, traditional commercial aircraft),
26  the FAA has issued over 80 regulations concerning design and construction, *see id.* §§ 25.601-
27  899, over 60 regulations about equipment, *see id.* §§ 25.1301-1461, and over 70 regulations

28

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

6

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1    pertaining to flight performance, such as lift, climb rates, and control and stability measures,

2    *see id.* §§ 25.21-255, 25.1501-1587.  There are still more standards governing other aspects,

3    such as the structure and hull of the aircraft, which must be able to withstand high-stress

4    conditions.  *See id.* §§ 25.301-581, 25.899, 25.901-1207, 25.1501-1801.

5    As to certification and inspection, the FAA evaluates and approves new versions of

6    commercial airplanes before the Airlines use them.  *See, e.g.*, 14 C.F.R. Parts 21, 25, 121, 125.

7    After testing, the FAA certifies compliance with these requirements by issuing type and

8    production certificates and certifying the "airworth[iness]" of individual aircraft before they

9    can fly.  14 C.F.R. § 121.153; *see* 49 U.S.C. § 44704(a), (c); 14 C.F.R. § 21.183; *see generally*

10   FAA, Order 8130.2J (July 21, 2017).[8]  And the FAA assesses whether "the product meet[s] the

11   applicable … emissions requirements."  14 C.F.R. § 21.21(b)(1).  Once the airplane has entered

12   service, additional regulations cover maintenance, *see id.* §§ 43.1-17, with heightened

13   requirements for commercial air carriers, *id.* §§ 121.361-380, 121.1101-1119.  Aircraft or

14   aircraft engines that fail inspection "may not be used in air transportation or in a way that

15   endangers air transportation."  49 U.S.C. § 44713(c); *see also id.* § 44717 (inspections related

16   to aging aircraft).

17   ***Aircraft Emissions***.  Congress gave the EPA statutory authority to issue "emission

18   standards applicable to the emission of any air pollutant from any class or classes of aircraft

19   engines which in [its] judgment causes, or contributes to, air pollution which may reasonably

20   be anticipated to endanger public health or welfare."  42 U.S.C. § 7571(a)(2)(A).  Before issuing

21   such standards, the EPA consults with the FAA and evaluates, among other things, the

22   technological feasibility of the standards and the cost of compliance.  *Id.* § 7571(b).  The FAA

23   must then "prescribe regulations to insure compliance" with the EPA's aircraft emissions

24   standards, and it denies airplane certifications if compliance is not met.  *Id.* § 7572(a).

25   The EPA has issued specific aircraft emissions standards, 40 C.F.R. Parts 87, 1031, and

26   the FAA requires compliance with those standards, 14 C.F.R. Part 34.  These regulations set

27

28

---

[8] https://www.faa.gov/documentLibrary/media/Order/Order_8130.2J.pdf.

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

acceptable limits for emissions of smoke and particulate matter, hydrocarbons, carbon monoxide, and nitrogen oxides—the very chemicals Plaintiffs contend are damaging their properties. *See* 40 C.F.R. § 1031.60; 14 C.F.R. §§ 34.20-31; SAC ¶ 2. The agencies also provide the exact procedures used to test aircraft engine emissions. 40 C.F.R. § 1031.140; 14 C.F.R. § 34.60.

The EPA affirmatively considered many of the issues raised in the SAC before promulgating its recent emissions standards. For example, in its most recent emissions rule, the EPA evaluated the health implications of airplane emissions for communities near airports, including the "MOV-UP Study" of particulate matter near Sea-Tac, which features prominently in the SAC. *Compare* Control of Air Pollution From Aircraft Engines: Emissions Standards and Test Procedures, 87 Fed. Reg. 72,312, 72,321-22 (Nov. 23, 2022), *with* SAC ¶¶ 61-66.

## II.    Factual And Procedural Background

The SAC alleges, on behalf of putative classes of residents, homeowners, and renters, claims against the Airlines and the Port of Seattle for aircraft emissions that purportedly "contaminated communities" within a five-mile radius of Sea-Tac. SAC 1, ¶¶ 2-4, 50-52, 79-85. Plaintiffs allege that by "travelling to and from Sea-Tac Airport," at "altitudes lower than 3,000 feet," aircraft "disperse" "pollutants" from their "exhaust" and "fuselages" that "are sucked downwind and accumulate in local communities." *Id.* ¶¶ 4, 53-59. According to Plaintiffs, "the closer an airplane flies to the ground," the more "concentrated" such "pollutants" become, placing "communities below aircraft flight paths" and "underneath and downwind of landing [or departing] aircraft" "particularly at risk of exposure to particulate matter." *Id.* ¶¶ 57, 59, 61, 64.

The named plaintiffs, who own properties within the SAC's so-called "Contamination Zone," allege that they have found "black dust" on their properties that they attribute to airplanes flying overhead. *Id.* ¶ 16. For example, Plaintiff Horace Cathcart alleges that after Sea-Tac's "third runway became operational in 2008," he "found that his home was directly below the new flight path," and he "noticed" an "increase in soot-like matter that settles on his

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

8

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

property." *Id.* ¶ 27.  In addition to an alleged "decline in the value of their property," the SAC generally alleges that "airport-related pollutants" "increas[e]" the "health risks faced by Plaintiffs and Class members," although the SAC does not allege that any Plaintiff has suffered any actual health issues as a result.  *Id.* at 28, ¶¶ 81, 84; *see id.* ¶¶ 13-39.

The SAC asserts claims for negligence, battery, continuing intentional trespass, and public nuisance against the Airlines and the Port. *Id.* ¶¶ 110-41.  Plaintiffs also bring an inverse condemnation claim against the Port only.  *Id.* ¶¶ 143-47.  The SAC seeks, among other relief: (1) the certification of two classes under Rule 23—a class of residents and a class of homeowners and renters who live within five-miles of Sea-Tac (¶ 98); (2) a declaration that the Airlines and the Port have violated state tort laws; (3) injunctive relief or damages "reflecting … the cost to remediate" properties of "contamination" and compensation for the alleged "loss of the use and enjoyment" of properties; and (4) injunctive relief in the form of a court-supervised medical monitoring program "to facilitate the diagnosis of … illnesses associated with exposure to airport-related pollution." *Id.* at 48-49.

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Collateral Attacks On FAA And EPA Orders.

Plaintiffs' claims against the Airlines are a collateral attack on FAA and EPA orders that can be brought only in a federal court of appeals.  Plaintiffs seek a declaratory order and compensation for alleged pollution resulting from takeoffs and landings at Sea-Tac. *E.g.*, SAC ¶¶ 15, 18, 24, 28, 32, 38, Prayer C-E.  These operations are pervasively and exclusively regulated by the FAA and EPA—from the flight paths and runway locations to the design of aircraft and aircraft engines and corresponding aircraft emissions. *See supra* pp. 2-8 (detailing the numerous FAA and EPA orders and regulations specifically controlling the Airlines' conduct).  Only the courts of appeals have jurisdiction to review claims challenging FAA and EPA orders and regulations.  *See* 49 U.S.C. § 46110(a), (c) ("exclusive jurisdiction" for challenges to FAA orders lies in the D.C. Circuit or the court of appeals where challenger

9

resides); 42 U.S.C. § 7607(b)(1) (challenges to EPA aircraft emissions standards "may be filed only in the" D.C. Circuit); *see also Krauss v. FAA*, 2016 WL 1162028, *3 (N.D. Cal. Mar. 24, 2016) (Under 49 U.S.C. § 46110(c), the federal courts of appeals have "exclusive jurisdiction … to affirm, amend, modify, or set aside" the FAA's "finalized domestic aviation regulations."); *McKay v. City & Cnty. of S.F.*, 2016 WL 7425927, at *6 (N.D. Cal. Dec. 23, 2016) (same).

Courts in the Ninth Circuit uniformly hold that plaintiffs cannot evade these jurisdictional limitations through a "collateral challenge to [an] agency order" based on artful pleading. *Tur v. FAA*, 104 F.3d 290, 292 (9th Cir. 1997) (citation omitted). A suit is an impermissible "collateral attack" when it is "inescapably intertwined" with agency actions or would effectively "re-litigate the merits of the previous administrative proceedings." *Id.* And a suit is "inescapably intertwined" with an agency decision where it "arise[s] out of the particular facts" of a plaintiff's encounter with a private party acting pursuant to agency orders. *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 & n.9 (9th Cir. 2006) (no jurisdiction over claims challenging TSA security directive that applied to "airline operators"); *see also Mace v. Skinner*, 34 F.3d 854, 860 (9th Cir. 1994) (observing that there would be no jurisdiction over an action that "amount[ed] to nothing more than a thinly disguised attempt at an end-run around" § 46110(c)). This is true regardless of whether or not the suit seeks damages. *See Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993) (suit for damages that was "inescapably intertwined with a review of the procedures and merits" of an FAA order was an "impermissible collateral challenge" to the order); *see also Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006) (following *Green*); *Krauss*, 2016 WL 1162028, *3 ("A damages claim is an 'inescapably intertwined' collateral attack against an FAA order when the resolution of the claim depends 'on the merits of [an] individual situation'") (citation omitted). And this rule also applies to "challenge[s] [to] the lawfulness of a third party's mere compliance with the 'terms' of [an FAA order]." *Krauss*, 2016 WL 1162028, *3 (quoting *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 341 (1958)). In short, a suit alleging that conduct

authorized by comprehensive regulations and orders is tortious is "'a collateral attack' on the system" of regulation. *N. Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 301, 311 (4th Cir. 2010) (citation omitted) (noting that 42 U.S.C. § 7607(b)(1) provides the proper avenue for judicial review of challenges to EPA emissions standards).

As in *McKay* and *Krauss*, the Court must dismiss Plaintiffs' claims because they are collateral attacks on FAA and EPA orders, regulations, and standards that can be heard ***only*** in the courts of appeals.[9] *McKay* is illustrative. There, plaintiffs alleged that airlines' use of FAA-approved flight paths resulted in "'disturbance and pollution' to plaintiffs and their properties," and they asserted various state tort claims, including nuisance and negligence. 2016 WL 7425927, at *1-2 (citation omitted). While the plaintiffs purported to "challenge the Defendants' own actions and inaction, without regard to whether or not they comply with FAA orders," *id.* at *7 (citation omitted), the court held that the "genesis of these complaints is the flight paths, and so plaintiffs' state law tort claims ***are*** 'inescapably intertwined with a review'" of the underlying FAA orders designating the flight paths, *id.* (quoting *Crist v. Leippe*, 138 F.3d 801, 803 (9th Cir. 1998)). Thus, the court dismissed the suit because 49 U.S.C. § 46110 deprived it of jurisdiction. *Id.* Similarly, in *Krauss*, the court concluded that it lacked subject-matter jurisdiction over nuisance claims alleging that defendants "unlawfully harmed [p]laintiffs by 'deploy[ing]' the new … flight paths mandated by the FAA." 2016 WL 1162028, at *3. The court held that such claims were "collateral attacks against the lawfulness of the FAA's order" that could be brought only in the "federal circuit courts." *Id.*

Here, the gravamen of Plaintiffs' SAC is that the Airlines' conduct—landing and taking-off from an FAA-approved airport, using FAA-dictated flight paths, and operating FAA-approved aircraft, all while complying with FAA regulations enforcing the EPA's aircraft emission standards—allegedly caused unreasonable pollution around Sea-Tac. This is an

---

[9] Courts may dismiss claims on jurisdictional grounds after parties remove cases to federal court. *See, e.g.*, *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1014 (9th Cir. 2016) (reversing denial of Rule 12(b)(1) motion after removal based on federal question jurisdiction).

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

11

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

impermissible collateral attack on prior FAA and EPA orders and regulations, many of which were promulgated after the FAA and EPA considered the very harm alleged here: the impact of airport operations on local communities.

Plaintiffs seek to impose liability for flying to and from Sea-Tac, especially at low altitudes. *E.g.*, SAC ¶¶ 57-58 (alleging that "when planes fly below 3,000 feet, there is not enough time for the wind to fully disperse the pollutants"). But the Airlines' flight paths and approach altitudes are ordered by the FAA. *See* Terminal Procedures Publication at 722-70 (setting specific approach and takeoff routes for Sea-Tac); FAA, Order JO 7110.65AA, § 2-1-2 (authorizing air traffic controllers to modify routes as needed). Moreover, the FAA has approved and optimized these flight paths to minimize fuel burn and reduce their environmental impact. Greener Skies FONSI at 2-3. Plaintiffs similarly allege that damage is "caused by airplanes flying in and out of Sea-Tac Airport, especially from the third runway." SAC ¶ 27. But the FAA has authorized the continued use of Sea-Tac and its third runway, finding that there would be "no significant air quality impacts" from the third runway and that "no air quality mitigation is necessary." Third Runway ROD at 23. Where, as here, "[t]he FAA already authorized the use of the flight paths," a demand that defendants pay "'compensation' for their usage" or "adopt additional measure[s] to mitigate any damages to plaintiffs" is a "challenge" to "the propriety [of] FAA's rulemaking and final decision." *McKay*, 2016 WL 7425927, at *5 (citation omitted). Accordingly, federal circuit courts have exclusive jurisdiction over Plaintiffs' claims attacking FAA orders, and this Court must dismiss the suit. *See id.*; 49 U.S.C. § 46110.

Plaintiffs also attempt to collaterally attack EPA orders promulgating aircraft emissions standards. *See, e.g.*, 40 C.F.R. § 1031.60; 14 C.F.R. §§ 34.20-31.[10] Plaintiffs seek to impose liability for damage allegedly caused by aircraft emissions. *E.g.*, SAC at 1, ¶¶ 64, 76. But it is the EPA—not juries—that sets aircraft emissions standards based on a number of factors within

---

[10] The EPA adopted the emissions standards now present in 40 C.F.R. Part 1031 through a series of orders. *E.g.*, 87 Fed. Reg. at 72,312 (order adopting particulate matter standards and codifying standards into 40 C.F.R. § 1031.60).

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1    its purview as an expert agency and consistent with United States' treaty obligations.  *E.g.*, 87

2    Fed. Reg. at 72,333-34; *see supra* pp. 7-8.  Where the EPA has already authorized emissions as

3    "reasonable and appropriate," *id.* at 72,324, a suit seeking a contrary conclusion constitutes a

4    collateral attack on the regulation, *see Cal. Dump Truck Owners Ass'n v. Nichols*, 784 F.3d

5    500, 506 (9th Cir. 2015) (holding 42 U.S.C. § 7607(b)(1) "'channels review of final EPA action

6    exclusively to the courts of appeals, ***regardless of how the grounds for review are framed***'"

7    (quoting *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996))); *New England Legal*

8    *Found. v. Costle*, 666 F.2d 30, 33 (2d Cir. 1981) (nuisance claim against power plant "is, in

9    effect, an attack upon the validity of the EPA-approved" order that "must be addressed to the

10    courts of appeals on direct appeal" under § 7607) (citation omitted).  Because this court lacks

11    jurisdiction under 42 U.S.C. § 7607(b)(1), the SAC should be dismissed with prejudice under

12    Rule 12(b)(1).[11]

13    **II.    Federal Law Preempts Plaintiffs' Claims.**

14        The Court should also dismiss Plaintiffs' claims because they are preempted by federal

15    law in three separate ways.  ***First***, "Congress may withdraw specified powers from the States

16    by enacting a statute containing an express preemption provision."  *Nat'l Fed'n of the Blind v.*

17    *United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016) (quoting *Arizona v. United States*, 567

18    U.S. 387, 399 (2012)).    Plaintiffs' claims are expressly preempted by both the Airline

19    Deregulation Act ("ADA") and the Clean Air Act ("CAA").  ***Second***, "States are precluded

20    from regulating conduct in a field that Congress, acting within its proper authority, has

21    determined must be regulated by its exclusive governance."  *Id.*    Plaintiffs' claims

---

[11] Plaintiffs are not without recourse.  The FAA is in the midst of a NEPA review of Sea-Tac's long-term development plan that will address numerous issues including air quality and environmental justice.  *See* SAC ¶¶ 70-72; Sustainable Airport Master Plan, https://www.portseattle.org/plans/sustainable-airport-master-plan-samp.  Separately, EPA is "conducting a demographic analysis to explore whether populations living nearest the busiest runways show patterns of racial and socioeconomic disparity."  87 Fed. Reg. at 72,324. Plaintiffs can submit comments or seek involvement in these proceedings, or they are free to petition FAA and EPA for new rulemakings.  *See* 5 U.S.C. § 553(e).  If Plaintiffs are dissatisfied with the agencies' resolution of their concerns, they can then seek review in the appropriate court of appeals.

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1   impermissibly invade the field of aircraft operations, including flight routes and emissions,

2   which is thoroughly and pervasively regulated by the FAA and EPA. ***Third***, "'state laws are

3   preempted when they conflict with federal law,' such that 'compliance with both federal and

4   state regulations is a physical impossibility, … [or] the challenged state law stands as an

5   obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

6   *Id.* Plaintiffs' claims conflict with federal law, because they would make it impossible for the

7   Airlines to comply with FAA flight-path directives, and they stand as an obstacle to federal

8   aircraft emissions laws.

9        Importantly, there is no presumption against preemption when construing an express

10  preemption clause, *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016),

11  or where the regulated conduct is outside "historic police powers of the States," *CTS Corp. v.*

12  *Waldburger*, 573 U.S. 1, 18 (2014) (citation omitted). Both of these principles apply here.

13  Congress has enacted multiple express preemption clauses, *see infra* Part II.A.1-2, and the

14  regulated conduct falls outside the historic police powers of the states because aviation

15  operations have traditionally been subject to exclusive federal control. *See Montalvo v. Spirit*

16  *Airlines*, 508 F.3d 464, 473 (9th Cir. 2007) (noting "the dominance of the federal interest in

17  [the] area … [of] air safety").

18       All three types of preemption extend to common law claims like this tort action. *See,*

19  *e.g.*, *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281-82 (2014) ("[S]tate common-law rules fall

20  comfortably within the language of the ADA pre-emption provision" because they have "the

21  force and effect of law." (citation omitted)); *Montalvo*, 508 F.3d at 474 (state tort claims are

22  barred by field preemption); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 490 (2013) (same for

23  conflict preemption). This is because "common-law liability is 'premised on the existence of a

24  legal duty,'" which means "a tort judgment" for a plaintiff "establishes that the defendant has

25  violated a state-law obligation." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (citation

26  omitted). And "state regulation can be as effectively exerted through the award of damages as

27  through some form of preventive relief." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521

28

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

14

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1   (1992) (brackets and citation omitted).  Where "federal law [has] preemptive effect," "[i]t

2   confers on private entities (*i.e.*, covered carriers) a federal right to engage in certain conduct

3   subject only to certain (federal) constraints"—i.e., free from ***all*** state-law obligations.  *Murphy*

4   *v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018).  State tort claims "disrup[t] the

5   federal scheme no less than state regulatory law to the same effect." *Ginsberg*, 572 U.S. at 283-

6   84 (quoting *Riegel*, 552 U.S. at 325); *see also Kurns v. R.R. Friction Prods. Corp.*, 565 U.S.

7   625, 637 (2012) (no exception from preemption for "state common-law duties and standards of

8   care"); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 246-47 (1959) (similar);

9   *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1026 (9th Cir. 2020) (discussing

10  "ability to regulate safety through common-law tort claims").

        Finally, courts routinely resolve all three types of preemption issues at the motion to

12  dismiss stage.  *See, e.g.*, *Ginsberg*, 572 U.S. at 276 (upholding dismissal under express

13  preemption clause of the Airline Deregulation Act); *Nat'l Fed'n of the Blind*, 813 F.3d at 722-

14  24 (upholding dismissal under field preemption); *McDaniel v. Wells Fargo Investments, LLC*,

15  717 F.3d 668, 672 (9th Cir. 2013) (upholding dismissal under conflict preemption).

16          **A.      Federal Law Expressly Preempts Plaintiffs' Claims.**

17                  **1.      The Airline Deregulation Act Preempts Plaintiffs' Claims.**

18          Plaintiffs' claims are inextricably related to the Airlines' routes and services, and thus

19  are preempted by the ADA.

20          **a.**      The ADA expressly preempts any state "law, regulation, or other provision

21  having the force and effect of law related to a price, route, or service of an air carrier."  49

22  U.S.C. § 41713(b)(1).  Section 41713(b)(1) is "deliberately expansive."  *Morales v. Trans*

23  *World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (citation omitted).  It preempts "enforcement

24  actions having a connection with or reference to airline 'rates, routes, or services,'" even if "the

25  effect is only indirect" and regardless of whether the state standard is "'consistent' or

26  'inconsistent'" with federal law; it also preempts state laws that "have a significant impact

27  related to Congress' deregulatory and pre-emption-related objectives."  *Id.* at 384, 386-87

28

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795                                    15

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1    (citations omitted); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370-71 (2008).

2    Accordingly, laws and claims that "bear[] a 'reference to'" "rates, routes, or services" are

3    preempted because they "relate to" those items.  *Morales*, 504 U.S. at 384, 388 (citation

4    omitted).  And where laws and claims bear no such reference they are preempted if they

5    "directly or indirectly, *bind*[] the carrier to a particular price, route or service and thereby

6    interfere[] with the competitive market forces within the industry."  *Dilts v. Penske Logistics,*

7    *LLC*, 769 F.3d 637, 646 (9th Cir. 2014) (describing standard under the ADA).

8          The word "routes" generally refers to "courses of travel" and "the point-to-point

9    transport of passengers."  *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir.

10   1998).  Similarly, "service" refers to "the frequency and scheduling of transportation, and to

11   the selection of markets to or from which transportation is provided (as in, 'This airline provides

12   service from Tucson to New York twice a day.')."  *Id.* at 1265-66; *see also id.* at 1266 ("service"

13   means "the provision of air transportation to and from various markets at various times").

14          **b.**     The ADA preempts Plaintiffs' claims against the Airlines because they have an

15   impermissible "connection with" the Airlines' "routes" and "services" at Sea-Tac.  The SAC

16   explicitly "ha[s] a connection with, or reference[s]," *Ginsberg*, 572 U.S. at 280 (citation

17   omitted), the Airlines' "routes" and "services" as the cause of Plaintiffs' alleged harm, *see, e.g.*,

18   SAC ¶¶ 3-10.  It ties the Airlines' alleged liability to flight paths within a five-mile radius

19   surrounding Sea-Tac.  *See, e.g.*, SAC ¶ 61 (alleging "communities below *aircraft flight paths*

20   … are exposed to significant … levels of ultrafine particulate matter air pollution" (emphasis

21   added)); SAC ¶ 59 ("As aircraft … *take off from and land at Sea-Tac Airport*, they rain down

22   pollutants on Contamination Zone communities" (emphasis added)); SAC ¶ 4 (alleging rates of

23   various health conditions "are significantly higher in the Contamination Zone than in other

24   Seattle communities *not under a flight path* or near Sea-Tac Airport" (emphasis added)); SAC

25   ¶ 27 (alleging harm resulting from a home's location "directly below [a] flight path"); SAC

26   ¶ 58 (alleging harm resulting from "the large numbers of low over-flights in the Contamination

27   Zone"); SAC ¶ 63 (alleging "a close association between airplane landing paths and fine

28

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

16

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

particulate matter contamination"); SAC ¶ 67 n.9 (alleging increased air pollution at schools "within 0.5 miles of an active flight path serving Sea-Tac Airport").

These allegations make clear that Plaintiffs' theory of liability hinges on the Airlines' "courses of travel" and "provision of air transportation to and from [Sea-Tac] at various times"—*i.e.*, their routes and services. *Charas*, 160 F.3d at 1265-66. Because Plaintiffs' claims plainly bear "reference" to the Airlines' routes and services, they are barred by the ADA. *Morales*, 504 U.S. at 384. In addition, Plaintiffs' claims would restrict—if not foreclose—the Airlines' flights to Sea-Tac. By imposing tort liability on the Airlines, the practical effect of Plaintiffs' claims would be to "bind" the Airlines to different ***routes*** that avoid Plaintiffs' properties (which, of course, the Airlines cannot do since their flight paths are dictated by the FAA, *see supra* p. 4-6.). *See Ginsberg*, 572 U.S. at 282. Such relief certainly would have a "significant impact" on those routes and corresponding provision of services. *See Rowe*, 552 U.S. at 371 (holding state law that would have required carriers to "follo[w] particular delivery procedures" in delivering tobacco products was preempted under an express preemption clause that "copied the language of the air-carrier pre-emption provision of the" ADA). Moreover, because "an award of damages" is "a potent method of governing conduct," *Cipollone*, 505 U.S. at 521-23, and because Plaintiffs allege that the Airlines' are liable for flying aircraft *anywhere* in the area encircling Sea-Tac, SAC ¶ 3, a favorable ruling for Plaintiffs could effectively bar all ***routes*** to Sea-Tac and foreclose the Airlines' ***service*** to Sea-Tac. That constitutes a significant impact on "the frequency and scheduling of [air] transportation." *Charas*, 160 F.3d at 1265-66; *cf. Ventress v. Japan Airlines*, 603 F.3d 676, 683 (9th Cir. 2010) (observing that "potential to ground a flight" amounts to "service" interruption (citation omitted)).

### 2. The Clean Air Act Preempts Plaintiffs' Claims.

Plaintiffs claim that the Airlines violated Washington law by emitting "dangerously high levels of pollutants" when flying to and from Sea-Tac. SAC at 1. But the CAA expressly prohibits states from adding to or deviating from federal aircraft emissions standards. *See* 42

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

17

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

U.S.C. § 7573.  Because Plaintiffs seek to impose standards that differ from federal law, the CAA expressly preempts their claims.

a. Title II, Part B of the CAA—titled "Aircraft Emission Standards"—gives the EPA, in consultation with the FAA, the authority to establish "standards applicable to the emission of *any* air pollutant from *any* class or classes of aircraft engines" which the FAA then enforces.  42 U.S.C. § 7571(a)(2)(A) (emphases added); *see also id.* § 7602(a).  The EPA and the FAA together regulate every aspect of aircraft emissions, including emissions that cause or contribute to "air pollution which may reasonably be anticipated to endanger public health or welfare."  42 U.S.C. § 7571(a)(2)(A); *see supra* pp. 7-8.  To preserve this framework of exclusive federal control, Section 233 of the CAA expressly preempts state and local standards relating to aircraft emissions:  "No State or political subdivision thereof may adopt or attempt to enforce *any* standard *respecting* emissions of *any* air pollutant from any aircraft or engine thereof unless such standard is identical to a standard applicable to such aircraft under this part."  42 U.S.C. § 7573 (emphases added).

The scope of Section 233 is sweeping.  The word "any" "has an expansive meaning" capturing "one or some indiscriminately of whatever kind."  *Patel v. Garland*, 596 U.S. 328, 338 (2022) (citations omitted).  "Respecting" is also expansive.  *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018).  Congress uses "respecting" to ensure "that the scope of a provision covers not only its subject but also matters relating to that subject."  *Id.* Section 233 thus broadly preempts state and local standards that have a connection with aircraft emissions, whether that connection is direct or indirect.  *See id.*; *cf. Morales*, 504 U.S. at 383-86; *California Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1052 (9th Cir. 2023).

The broad scope of Section 233 is underscored by the lack of a saving clause for state law.  This is in marked contrast to Section 209 of the Clean Air Act, which governs preemption of state laws regulating motor vehicle emissions.  *See* 42 U.S.C. § 7543(d).  That contrast crystallizes that state law has no role in regulating *aircraft* emissions:  states may neither add to nor deviate from federal aircraft emission standards.  As the EPA construes it, "CAA section

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

18

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

233 vests the authority to promulgate emission standards for aircraft or aircraft engines **only** in the Federal Government." 87 Fed. Reg. at 72,316 (emphasis added).

Consistent with the plain, expansive scope of Section 233, the Ninth Circuit has held that the CAA preempts every state standard that "would affect the aircraft or engine." *California v. Dep't of Navy*, 624 F.2d 885, 888 (9th Cir. 1980). The *Navy* test is simple: if the state standard (or standard of care) cannot be met "without affecting the design, structure, operation, or performance of the [aircraft or] aircraft engine," then it is preempted. *Id.* Any other test would undermine the very purpose of Section 233: to protect "the owner and the manufacturer of the vehicle and the engine against the 'chaos' of multiplex standards for entities which readily traverse state lines." *California v. Dep't of Navy*, 431 F. Supp. 1271, 1285 (N.D. Cal. 1977), *aff'd*, 624 F.2d 885 (9th Cir. 1980); *see id.* at 1288 ("This Court does not, of course, dispute the fact that Congress has clearly and pervasively preempted the field of aircraft emissions.").

**b.** The CAA preempts Plaintiffs' claims against the Airlines. Plaintiffs allege that the Airlines violated state law by emitting "dangerously high levels of pollutants" from their aircraft. SAC at 1; *see also* SAC ¶¶ 18, 24, 28, 32, 38, 55, 76, 78. Put differently, Plaintiffs seek to enforce a "standard respecting emissions of [certain] air pollutant[s]" from aircraft and aircraft engines. 42 U.S.C. § 7573. But Plaintiffs do not claim that the pollutants allegedly emitted by the Airlines violate **federal** aircraft emissions standards. This failure to allege a breach of the federal standards establishes that Plaintiffs necessarily seek to enforce a "standard" that differs from federal law. *Id.* Thus, under the statute's plain language, Section 233 preempts Plaintiffs' claims.

*Navy* confirms this result: if Plaintiffs prevail, then their state-law claims will necessarily affect "the design, structure, operation, or performance of the [aircraft or] aircraft engine." *Navy*, 624 F.2d at 888. There simply is no way for the Airlines to comply with the supposed state-law standards without modifying their aircraft or aircraft engines, the alleged source of the emissions, or taking different flight paths at different altitudes. The CAA prohibits

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

19

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

Plaintiffs from mandating the former, and the extensive FAA regulations prohibit Plaintiffs from mandating the latter. *See supra* pp. 4-6.

**B.      Plaintiffs' Claims Are Foreclosed By Field Preemption.**

Plaintiffs allege that the Airlines violated state tort law because aircraft subject to EPA emissions standards flying on FAA-prescribed routes and altitudes necessary to take off and land safely at Sea-Tac emitted substances that harmed Plaintiffs. But federal law comprehensively regulates the field for the flight operations at issue in this case, which includes airspace management and flight paths, aviation safety, design requirements for aircraft and aircraft engines, and aircraft emissions.

**1.      The Federal Government Occupies The Field For The Flight Operations At Issue In This Case.**

"States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399. Congress intended to subject a field to exclusive federal control when the federal "framework of regulation [is] 'so pervasive that Congress left no room for the States to supplement it' or where there is a 'federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (omissions accepted; citation omitted). Both the "comprehensiveness of a statute" and the "pervasiveness of the regulations enacted pursuant to [that] statute" are used to demonstrate federal "control" of a field. *Montalvo*, 508 F.3d at 470, 473. Field preemption bars any state standard that falls into a federally occupied field, even state standards that are "parallel" or "complementary" to the federal regime. *Arizona*, 567 U.S. at 401. The Ninth Circuit has long "recognized that 'preemptive intent is more readily inferred' in the field of aviation, because it is 'an area of the law where the federal interest is dominant.'" *Nat'l Fed'n of the Blind*, 813 F.3d at 724 (quoting *Montalvo*, 508 F.3d at 471).

**a.**      Congress has given the federal government "exclusive sovereignty [over the] airspace of the United States," 49 U.S.C. § 40103(a)(1), and the corresponding authority to

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

20

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

regulate is vested in the FAA, *id.* § 40103(b).  Accordingly, the FAA has set forth a "uniform and exclusive system of federal regulation," *Montalvo*, 508 F.3d at 471 (citation omitted), issuing hundreds of regulations and orders that govern every relevant aspect of aircraft operations—including the location and design of runways, *supra* pp. 3-4, the flight paths aircraft must take, the altitude at which aircraft must fly, the procedures for taking off and landing, *supra* pp. 4-6, and the design of aircraft bodies and engines, *supra* pp. 6-7.  And EPA and FAA regulations and orders extensively govern aircraft emissions, including the very particulates that Plaintiffs claim have harmed them.  *Supra* pp. 7-8.

The "density and detail" of these standards, *Nat'l Fed'n of the Blind*, 813 F.3d at 734, reflect the "uniform and exclusive system of federal regulation," *Montalvo*, 508 F.3d at 471 (citation omitted).  They also establish that the federal government has specified, "with striking precision," the routes and altitudes within which aircraft must be flown, as well as the design of aircraft engines and bodies.  *Nat'l Fed'n of the Blind*, 813 F.3d at 734-35.  Therefore, "the pervasive control vested in EPA and in FAA," as reflected by the hundreds of standards governing the areas of aviation operations implicated by Plaintiffs' claims—particularly airspace management, aircraft engine and body design, and aircraft emissions—makes clear that there simply is "no room" for supplemental state standards.  *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 638 (1973); *see id.* at 640 ("We are not at liberty to diffuse the powers given by Congress to FAA and EPA by letting the States … in on the planning."); *see also Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. 2009) (where "agency issues 'pervasive regulations' in an area … the FAA preempts all state law claims in *that* area").

**b.**  Plaintiffs' claims also interfere with "dominant" federal interests in safety and national uniformity.  *See Montalvo*, 508 F.3d at 471 ("The purpose, history, and language of the [Federal Aviation Act] lead us to conclude that Congress intended to have a single, uniform system for regulating aviation safety.").  "The regulation of interstate flight … must of necessity be monolithic.  Its very nature permits no other conclusion."  *French v. Pan Am Exp., Inc.*, 869

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795                                    21

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

F.2d 1, 6 (1st Cir. 1989). Thus, "the whole tenor" of the Federal Aviation Act was "to create and enforce one unified system of flight rules." *Montalvo*, 508 F.3d at 471 (citation omitted). A "'patchwork of state laws … would create a crazyquilt effect," *id.* at 473 (citation omitted), "undermining the legislative goal of ensuring uniformity" and interfering with the agencies' "authority to serve as the principal arbiter" of aviation-operations issues, *Ventress v. Japan Airlines*, 747 F.3d 716, 722 (9th Cir. 2014). Exclusive federal control of flight paths and emissions standards falls within the heartland of the federal interests in safety and uniformity—to quite literally prevent airplanes from colliding or aircraft engines from choking. Exclusive federal regulation also ensures that the United States meets its obligations to abide by international standards on aircraft emissions and travel.[12]

    **c.**    Given these dominant federal interests and extensive federal regulations, the Supreme Court and Ninth Circuit have long held that the "federal government ha[s] preempted the field of 'airspace management.'" *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1311, 1316 (9th Cir. 1981) (quoting *City of Burbank*, 411 U.S. at 627); *see also Martin*, 555 F.3d at 809 ("Claims regarding airspace management … have been declared preempted."). This prevents states from regulating "forbidden, exclusively federal areas, such as flight paths, hours, or altitudes." *Skysign Int'l, Inc. v. City & Cnty. of Honolulu*, 276 F.3d 1109, 1117 (9th Cir. 2002); *see Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 92 (2d Cir. 1998) ("law controlling flight paths through navigable airspace is completely preempted").

    The Supreme Court held in *City of Burbank* that a city ordinance that limited overnight takeoffs from a local airport in an effort to prevent noise pollution was barred by field preemption because it would "severely limit the flexibility of FAA in controlling air traffic

---

[12] In regulating aircraft emissions, the EPA has consistently promulgated standards that match the mandatory standards set by the United Nations' International Civil Aviation Organization (ICAO) under Annex 16 to the Convention on International Civil Aviation, which the United States is required to adhere to under the Convention. The EPA has repeatedly found those international standards to be "reasonable and appropriate" and gives "significant weight to the United States' treaty obligations" and the importance of "uniformity in international aviation regulations and standards," which "helps prevent barriers in the global aviation market." 87 Fed. Reg. at 73,324-25.

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

flow."  411 U.S. at 638-39.  "[T]o exclude the aircraft noise from the Town," the Court explained, "is to exclude the aircraft," which would flout the FAA's authority over "airspace management" and be utterly inconsistent with the "pervasive … scheme of federal regulation" of airspace.  *Id.* at 627-28, 633.  The same is true here—to limit or exclude aircraft emissions would be to limit or exclude aircraft, directly impinging on the FAA's authority to manage the Seattle airspace.  Likewise, in *Gianturco*, the Ninth Circuit relied on *Burbank* to hold that a state-imposed "curfew" on takeoffs and landings "impinge[d] on airspace management," a federally occupied field, "by directing when planes may fly in the San Diego area."  651 F.2d at 1316; *see also Bryski v. City of Chicago*, 499 N.E.2d 162, 167 (Ill. Ct. App. 1986) ("As plaintiffs' claims in nuisance and trespass [for noise and air pollution caused by aircraft takeoffs and landings near O'Hare] are based completely upon the inflight operation of aircraft, they necessarily interfere with the Federal regulation of airspace management and are preempted by Federal law under *Burbank*."); *United States v. City of Blue Ash*, 487 F. Supp. 135 (S.D. Ohio 1978), *aff'd*, 621 F.2d 227 (6th Cir. 1980) (state route restrictions field preempted under *Burbank*).  And the Supreme Court has recognized that Congress has "pre-empted the field so far as emissions from airplanes are concerned."  *Washington v. Gen. Motors Corp.*, 406 U.S. 109, 115 (1972).

Federal law also "establishes the applicable standards of care in the field of aviation safety," *Montalvo*, 508 F.3d at 468, given "the pervasiveness of federal safety regulations … and the congressional goal of a uniform system of aviation safety," *Ventress*, 747 F.3d at 722 (holding that pilot's retaliation claims against airline employer for raising concerns about fellow pilot's medical fitness were barred by field preemption); *see Montalvo*, 508 F.3d at 468 (concluding that California tort claims seeking to hold airlines liable for blood clots allegedly caused by cramped airplane seats were preempted); *cf. Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 365 (3d Cir. 1999) (holding that federal law preempts "the entire field of aviation safety"); *French*, 869 F.2d at 6-7 (similar).

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

23

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

Federal control over aircraft operations, including flight paths and emissions standards, is based explicitly on safety. *See, e.g.*, 49 U.S.C. § 40103(b)(1) (FAA must "order the ***use of the airspace necessary to ensure the safety of aircraft***" (emphasis added)); 49 U.S.C. § 44701(a)(1) (FAA shall "promote safe flight of civil aircraft in air commerce by prescribing … ***standards required in the interest of safety*** … for the design, material, construction, quality of work, and performance of ***aircraft, aircraft engines***, and propellers" (emphases added)). Federal regulations and orders that specify in precise detail the exact paths that aircraft should follow in approaching or taking off from Sea-Tac are crucial to preventing collisions. *See supra* pp. 4-6. Similarly, aircraft emissions, whether particulate matter from engines or material flaking from the fuselage, are a byproduct of the design, construction, and performance of aircraft and aircraft engines. Aircraft design and performance are also vital to aircraft safety, as the numerous governing federal regulations illustrate. *See supra* pp. 6-7.

Thus, there is no question that the FAA occupies the field for flight operations at issue here—involving airspace management and flight paths, aviation safety, aircraft engine and body design, and emissions. Indeed, the FAA has explained in the context of evaluating the environmental impact of Sea-Tac operations that "long-established doctrines of Federal preemption preclude [local] communities from regulating aircraft operations conducted at SeaTac." FAA, Record of Decision for the Master Plan Update Development Actions Sea-Tac International Airport, *supra*, at 11.

### 2. Plaintiffs' Claims Impermissibly Intrude Into The Field Of Flight Operations.

Because Congress reserved for the FAA and EPA the exclusive authority to regulate the field with respect to flight paths, aircraft body and engine design, and aircraft emissions, and because Plaintiffs' claims intrude into these areas, they are preempted.

**a.** ***Airspace Management and Flight Paths***. Plaintiffs allege that the Airlines, by following specific flight paths at specific altitudes while taking off from and landing at Sea-Tac, polluted the Contamination Zone in violation of state law. *See* SAC ¶¶ 1-10, 27, 59, 61.

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

24

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

But those flight paths and altitudes (and the siting of the airport and runways) are dictated and controlled by the FAA for both airspace management and safety purposes, and numerous cases have held that the FAA has exclusive authority in this area. *See supra* pp. 22-23. Plaintiffs do not allege that the Airlines have deviated from any FAA-approved flight path. Plaintiffs are thus seeking to hold the Airlines liable for following federal law. Put differently, they are mounting an impermissible "indirect challenge[]" to FAA regulations and orders "under the guise of state law," which "interferes with the agency's authority to serve as the principal arbiter" of flight operations. *Ventress*, 747 F.3d at 722.

      **b.**    ***Aircraft Emissions and Design.***  Plaintiffs also allege "harm caused by" the "emission" of "pollutants" from airplanes, SAC at 1, and "a close association between airplane landing paths and fine particulate matter contamination," *id.* ¶ 63. But aircraft emissions standards are ***exclusively*** set by the EPA and enforced by the FAA for reasons of international uniformity, *see supra* pp. 7-8, 22, and the purported emissions come from aircraft (and aircraft engines) whose design, construction, maintenance, performance, and fueling are meticulously regulated, inspected, and certified by the FAA for safety reasons, *see supra* pp. 6-7; 49 U.S.C. §§ 44702, 44704, 44714(1); 14 C.F.R. §§ 21.1-700. Moreover, while Plaintiffs allege that their injuries were caused in part by heavy metals which "flake off [an] aircraft's body," SAC ¶¶ 54-55, the FAA also regulates the design and structure of aircraft hulls, including the materials used, *see* 14 C.F.R. §§ 25.301-581, 25.601-631. Therefore, as with flight paths, Plaintiffs are seeking to hold the Airlines liable for complying with federal regulations that specify, "with striking precision," the boundaries within which aircraft and aircraft engines may be designed, manufactured, and operated. *Nat'l Fed'n of the Blind*, 813 F.3d at 734-35. To evaluate Plaintiffs' claims, a factfinder would have to assess the design of the Airlines' aircraft bodies and engines, as well as FAA's enforcement of EPA emissions standards, intruding into an area that is exclusively controlled by the federal government.

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

25

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

**C.    Plaintiffs' Claims Are Barred By Conflict Preemption.**

Plaintiffs' claims against the Airlines are separately preempted because they "conflict with federal law," *Arizona*, 567 U.S. at 399, under both the doctrines of impossibility and obstacle preemption, *see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 604 (2011). Like field preemption, conflict preemption stems from federal agency regulations, *City of New York v. FCC*, 486 U.S. 57, 64 (1988), and applies even when the state standard "attempts to achieve one of the same goals as federal law," *Arizona*, 567 U.S. at 406. Conflict preemption is more readily applied when, as here, the conduct at issue involves "uniquely federal areas of regulation." *Whiting*, 563 U.S. at 604.

**1.    Plaintiffs' Claims Would Make It Impossible For The Airlines To Comply With FAA Flight Path Directives.**

Plaintiffs' state-law claims would make it "impossible" for the Airlines "to comply with … federal law" regarding flight paths and remain in the marketplace. *Mut. Pharm.*, 570 U.S. at 480, 486-87 n.3. As discussed, the Airlines are subject to detailed and pervasive FAA regulations and orders that direct every aspect of their flight paths in and out of Sea-Tac. *See supra* pp. 4-6. But if Plaintiffs were to prevail, the Airlines, to avoid future liability, would need to alter their flight paths, takeoffs, and landings, which, of course, they cannot do. *See id.* Because it would be impossible for the Airlines both to follow the FAA mandates on flight operations *and* comply with Plaintiffs' state tort law standards, Plaintiffs' claims are preempted. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623-24 (2011) ("[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes."). It is not enough for Plaintiffs to claim that the Airlines can stop their flights entirely or pay damages. The Supreme Court has made clear that simply withdrawing "from the market in order to comply with both state and federal law" would "render impossibility pre-emption a dead letter and work a revolution" in preemption caselaw. *Mut. Pharm.*, 570 U.S. at 475. In rejecting this "stop-selling" theory as "incompatible" with its preemption caselaw, the Supreme Court explained that its cases

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

26

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1  "presume that an actor seeking to satisfy both his federal- and state-law obligations is not

2  required to cease acting altogether in order to avoid liability." *Id.* at 488.  And Plaintiffs cannot

3  avoid that conclusion by asserting that the Airlines can pay damages, as preemption is not

4  "defeated by the prospect that a [defendant] could 'pa[y] the state penalty' for violating a state-

5  law duty." *Id.* at 487 n.3; *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326

6  (2015) ("[A] court may not hold a civil defendant liable under state law for conduct federal law

7  requires.").

8        **2.    Plaintiffs' Claims Stand As An Obstacle To Federal Emissions Laws.**

9        Congress instructed the EPA and FAA to balance several overlapping and potentially

10  competing policies when regulating aircraft emissions.  Plaintiffs' state-law claims undermine

11  that careful balancing, because they seek to impose different standards via jury, rather than the

12  expert agencies, that would necessarily balance the scales differently.

13        Where, as here, a regulatory framework "represents a reasonable accommodation of

14  conflicting policies that were committed to the agency's care by the statute," and when state

15  law disturbs or "frustrates the purposes" of that framework, the federal framework has

16  preemptive effect.  *City of New York*, 486 U.S. at 64 (citation omitted).  "When Congress

17  charges an agency with balancing competing objectives, it intends the agency to use its reasoned

18  judgment to weigh the relevant considerations and determine how best to prioritize between

19  these objectives." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1029 (9th Cir. 2022) (citation omitted).

20  And when states "impose a different standard," they necessarily balance the competing

21  objectives differently, thus standing as an obstacle to the federal regime.  *Id.* (citation omitted).

22        **a.**    Pursuant to Congress' direction, the EPA and FAA balance competing policy

23  considerations when issuing aircraft emission regulations, including air quality, public health

24  and welfare, safety, noise, national defense, international emission requirements, competition,

25  and the encouragement of new technology.  *See* 42 U.S.C. § 7571(a)(2)(A), (B)(ii), (c); 49

26  U.S.C. §§ 40101(c)-(e), 44701(a).  Like the agency in *Cohen*, the EPA and FAA have made

27  clear that they "must strike a balance" between these competing interests.  46 F.4th at 1029.

28

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

27

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

Just last year, for example, the EPA issued a final aircraft emissions rule pursuant to its statutory authority "to identify a reasonable balance of specified emissions reduction, cost, safety, noise, and other factors," including the relationship between U.S. and international aircraft emission standards.  87 Fed. Reg. at 72,316-19.

      **b.**      Plaintiffs' claims would disrupt the careful balance struck by the EPA and FAA. Because Congress charged the EPA and FAA "with balancing" "overlapping and potentially conflicting policies," it intended the agencies "to use [their] reasoned judgment to weigh the relevant considerations and determine how best to prioritize [them]."  *Cohen*, 46 F.4th at 1029 (citation omitted).  Allowing Plaintiffs to use "state law to impose a different [aircraft emission] standard"—one that is based on a "re-balancing" of the potentially conflicting policies—would render the EPA's and FAA's "statutorily mandated balancing essentially meaningless." *Cohen*, 46 F.4th at 1029, 1031 (citation omitted).  Such interference is impermissible.

      The case for obstacle preemption is even stronger given that aircraft emissions regulation is "an area of dominant federal concern." *Whiting*, 563 U.S. at 604.  *See supra* pp. 7-8.  Aircraft emission standards are part of an intricate and "unusually complex" federal regulatory regime.  FAA, Advisory Circular 34-1B, at 1 (June 27, 2003).[13]  Indeed, Congress made clear that ***only*** the federal government can establish aircraft emission standards.  42 U.S.C. § 7573; *see supra* pp. 17-20.  Because Plaintiffs' state-law claims "would interfere with the nationwide uniformity of [federal] regulation" that Congress intended, they are barred by obstacle preemption.

## CONCLUSION

      For the foregoing reasons, the Court should dismiss the SAC with prejudice.

---

[13] https://www.faa.gov/documentLibrary/media/Advisory_Circular/AC_34-1B.pdf.

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

28

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1

2

DATED: October 27, 2023

3

4

By: s/Malaika M. Eaton                         By: s/Steven W. Fogg
   Malaika M. Eaton, WSBA No. 32837            Steven W. Fogg, WSBA No. 23528

5

McNAUL EBEL NAWROT & HELGREN PLLC    CORR CRONIN LLP

6

7

8

9

10

Malaika M. Eaton, WSBA No. 32837        Steven W. Fogg, WSBA No. 23528
Gregory J. Hollon, WSBA No. 26311       Lucio E. Maldonado, WSBA No. 54279
Michael P. Hatley, WSBA No. 5700        1015 Second Avenue, Floor 10
600 University Street, Suite 2700       Seattle, Washington  98104-1001
Seattle, Washington  98101              Tel: (206) 625-8600
Tel: (206) 467-1816                     sfogg@corrcronin.com
meaton@mcnaul.com                       lmaldonado@corrcronin.com
ghollon@mcnaul.com
mhatley@mcnaul.com

11

12

13

14

15

16

GIBSON DUNN & CRUTCHER LLP              SKADDEN, ARPS, SLATE,
                                        MEAGHER & FLOM LLP
Daniel Nelson, *pro hac vice*
Stacie Fletcher, *pro hac vice*         Nina Rose, *pro hac vice*
Joseph Edmonds, *pro hac vice*          Shay Dvoretzky, *pro hac vice*
1050 Connecticut Ave., NW               John H. Beisner, *pro hac vice*
Washington D.C. 20036                   1440 New York Ave., NW
Tel: (202) 955-8500                     Washington D.C. 20005
dnelson@gibsondunn.com                  Tel: (202) 371-7000
sfletcher@gibsondunn.com                nina.rose@skadden.com
jedmonds@gibsondunn.com                 shay.dvoretzky@skadden.com
                                        john.beisner@skadden.com

17

18

KING & SPALDING LLP                     *Attorneys for Defendant Alaska Air
                                        Group*
Madison H. Kitchens, *pro hac vice*
Peter Hsiao, *pro hac vice*

19

David Balser, *pro hac vice*
David Willingham, *pro hac vice*

20

Kelly Perigoe, *pro hac vice*
11180 Peachtree St., NE

21

Atlanta, GA 30309
Tel: (404) 572-4600

22

mkitchens@kslaw.com
phsiao@kslaw.com

23

dbalser@kslaw.com
dwillingham@kslaw.com

24

kperigoe@kslaw.com

25

*Attorneys for Defendant Delta Air Lines, Inc.*

26

27

28

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

29

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816

1

**CERTIFICATION OF COMPLIANCE WITH THE WORD LIMIT**

As required by Local Rule 7(e)(6), I certify that this Motion contains 9,992 words, excepting captions, tables of contents, tables of authorities, signature blocks, and certificates of service, in compliance with the Order of this Court of October 25, 2023, Dkt. 47.


DATED:  October 27, 2023                    MCNAUL EBEL NAWROT & HELGREN
                                            PLLC

                                            By: s/Malaika M. Eaton_____
                                                Malaika M. Eaton, WSBA No. 32837

AIRLINES' JOINT MTD
Case No. 2:23-cv-00795

30

McNAUL EBEL NAWROT & HELGREN
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone: (206) 467-1816