1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

CINDY CODONI and MICHELLE
GEER,

CASE NO. 2:23-cv-795-JNW

ORDER ON MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

9

Plaintiffs,

10

v.

11
12

PORT OF SEATTLE, ALASKA AIR
GROUP, and DELTA AIR LINES INC.,

13

Defendants.

14

## 1. INTRODUCTION

15

This is a putative class action about the effects of aircraft emissions near the

16

Seattle-Tacoma International Airport ("Sea-Tac Airport" or "Airport"). Plaintiffs

17

include property owners and residents within a five-mile radius of Sea-Tac Airport

18

who allege that Defendants' pollution has caused physical harm, death, and

19

property damage. Plaintiffs' claims against all Defendants include negligence,

20

battery, continuing intentional trespass, and public nuisance. They also pursue an

21

inverse condemnation claim against Defendant Port of Seattle. Plaintiffs pursue

22

only state-law claims.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Defendants Alaska Air Group and Delta Air Lines, Inc. jointly move to dismiss, Dkt. No. 49, while the Port moves to dismiss on its own, Dkt. No. 50. Defendants argue primarily that federal law preempts Plaintiffs' state-law claims. Defendants also raise separate subject-matter jurisdiction challenges under Federal Rule of Civil Procedure 12(b)(1). For the reasons below, the Court DENIES the motions. Dkt. Nos. 49, 50.

## 2. BACKGROUND[1]

Plaintiffs own property or reside within a five-mile radius of Sea-Tac Airport. They refer to this area as the "Contamination Zone" because aircraft using the Airport release or shed various emissions in that area, contaminating it with pollution. Plaintiffs allege that the pollution "caused by airplanes at Sea-Tac [Airport] leads to hundreds of excess deaths in the Contamination Zone per year." Dkt. No. 43 (Second Amended Complaint or "SAC") at 2. Likewise, they claim "this pollution exposes Class members to a heightened risk of disease." *Id*. Further, Plaintiffs allege that Defendants' conduct has contaminated their land "with dangerously high levels of pollution, including but not limited to levels of magnesium, aluminum, iron, copper, zinc, arsenic, silver, and lead at levels that exceed OSHA limits." *See id*. at 11, 12, 15, 16. They claim that the pollution is visible, soot-like sediment that builds up on their yards, roofs, and cars. *Id*.

---

[1] When a motion attacks the complaint on its face, the Court must accept all well-pleaded facts as true. *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014). Thus, the Court merely summarizes Plaintiffs' factual allegations from the complaint and discusses more specific, detailed factual allegations in the discussion section that follows.

1
2
3
4
5

According to Plaintiffs' Second Amended Complaint, those living in the Contamination Zone are more likely to be racial minorities and members of low-income households, with more than 30 percent of residents living at 200 percent below the federal poverty level. *Id*. at 7. The Second Amended Complaint discusses this disproportionality:

6
7
8

> The disproportionate harm from airport pollution on low-income and minority-majority communities is an environmental and social injustice[]. Defendants' behavior would not be tolerated if the affected communities were wealthy and politically powerful, such as Mercer Island or Medina.

9
10
11
12
13

> Defendants have long known about the injustice of this disparate impact on Sea-Tac area communities. Defendants have known at least since 2021 (and likely significantly earlier) that their actions created a de facto Contamination Zone around the airport, making people sick and exposing them to greater risk of disease than normal. But despite this knowledge, and despite pleas from local residents, Defendants have ignored the consequences of their actions and have not addressed the problem . . . . In fact, Defendants have recently expanded their operations at Sea-Tac, raking in profits at the expense of the health and lives of families living in the Contamination Zone.

14

*Id*.

15
16
17
18
19

Plaintiffs' Second Amended Complaint cites to recent scientific reports from the University of Washington and a Public Health Report by King County to illustrate the increased health risks and death rates associated with living in the Contamination Zone. Plaintiffs include figures from these reports, asserting these statistics show:

20
21
22

- "People who live in the Contamination Zone are more likely to be hospitalized for asthma, chronic obstructive pulmonary disease (COPD) and heart disease than other King County residents." *Id*. at 33.

23

- "Babies born in the Contamination Zone are more often premature and have lower birthweights than those born elsewhere in the County." *Id*. at 34.

- "People who live in the Contamination Zone have a shorter life expectancy at birth than other residents of King County" by several years. *Id*.

- People who live in the Contamination Zone "die more often from cancer, heart disease, and chronic lower respiratory disease" than other King County residents. *Id*. at 34–35.

- "[C]ommunities within the Contamination Zone experience over 100 excess deaths per year on average as a result of their proximity to the airport." *Id*. at 36.

Plaintiffs named Alaska and Delta Airlines as Defendants because those Airlines operate about 80 percent of flights at Sea-Tac Airport, thereby causing most of the pollution. *Id*. at 14.

Plaintiffs filed this action in King County Superior Court and Defendants removed it to federal court in May 2023. *See* Dkt. No. 1. On August 11, 2023, Plaintiffs filed the operative complaint—their Second Amended Complaint. Dkt. No. 43. Defendants subsequently moved to dismiss, with the Defendant Airlines filing a joint motion, Dkt. No. 49, and the Port filing its own, Dkt. No. 50.

## 3.  DISCUSSION

### 3.1  Sua sponte consideration of subject-matter jurisdiction.

When Defendants removed this case, they alleged multiple bases for this Court's subject-matter jurisdiction. *See* Dkt. No. 1-1. When a case is removed, "the district court ha[s] a duty to establish subject matter jurisdiction . . . *sua sponte*, whether the parties raise[ ] the issue or not." *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004); *see also Polo v. Innoventions*

1    *Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("ultimate responsibility to ensure

2    jurisdiction lies with the district court"). Thus, the Court must establish its

3    jurisdiction before considering the merits of the pending motions. *United Investors*

4    *Life Ins. Co.*, 360 F.3d at 965. On this score, the Court requested and considered

5    supplemental briefing about specific issues related to its subject-matter jurisdiction

6    and potential abstention, including two statutory exceptions to the Class Action

7    Fairness Act—the primary basis alleged for jurisdiction—in the Local Controversy

8    Exception and the Home State Exception. Dkt. No. 67; *see also* Dkt. Nos. 70–72;

9    *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223–24 (9th Cir. 2020) (explaining

10   that the Local Controversy and Home State exceptions are forms of abstention that

11   district courts may raise sua sponte).

12        The Court finds that CAFA provides federal subject-matter jurisdiction. *See*

13   28 U.S.C. § 1332(2). The basic elements of CAFA jurisdiction are easily met here:

14   this case is a putative class action with at least 100 class members, "in which the

15   matter in controversy exceeds the sum or value of $5,000,000," and in which

16   minimal diversity exists. *Id*. Plaintiffs concede these elements are met. Dkt. No. 72

17   at 5. They also submit that the "primary defendants include non-state actors." *Id*.

18        The Court finds that it need not remand the case under either CAFA

19   exception. "Once CAFA jurisdiction has been established, . . . the burden falls on the

20   party seeking remand . . . to show that an exception to CAFA jurisdiction applies."

21   *Adams*, 958 F.3d at 1221. Plaintiffs did not address the Home State Exception, *see*

22   *generally* Dkt. No. 72, so the Court considers only the Local Controversy Exception.

23

The Local Controversy Exception is not jurisdictional; rather, courts treat the exception as a form of mandatory abstention. *Adams*, 958 F.3d at 1223–24. This exception is narrow, but if it applies, "the district court must remand the case to state court." *Allen*, 821 F.3d at 1116 (citing *Serrano v. 180 Connect, Inc.*, 487 F.3d 1018, 1022 (9th Cir. 2007)); *see also Busker v. Wabtec Corp.*, 750 Fed. App'x. 522, 523 (9th Cir. 2018).

The Local Controversy Exception has four prongs. 28 U.S.C. § 1332(d)(4)(A). The first prong requires the plaintiff to prove that two-thirds of the putative class members are citizens of the state in which the case was filed. 28 U.S.C. § 1332(d)(4)(A)(i)(I). Putative class members' citizenship "must be determined as of the operative complaint at the date of removal." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1279 (9th Cir. 2017) (citing 28 U.S.C. § 1332(d)(7)). When the defendant does not concede the first prong of the test, the plaintiff must present some evidence of class citizenship. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013); *Adams*, 958 F.3d at 1221. And while the Ninth Circuit has "repeatedly cautioned" that the plaintiff's burden of proof on the issue of class citizenship "should not be exceptionally difficult to bear," *Adams*, 958 F.3d at 1221 (internal quote omitted), the court cannot base its decision "simply on a plaintiff's allegations, when they are challenged by the defendant," *Mondragon*, 736 F.3d at 884.

*Mondragon* is instructive. 736 F.3d 880 (9th Cir. 2013). There, the proposed class was limited by definition to those consumers who purchased and registered cars in California. *Id*. at 883–84. The district court noted that to register a car in

California, one would need to own residential property in the state. *Id.* Accordingly, from the class definitions alone, the district court inferred that at least two-thirds of the putative class members were California citizens and thus the Local Controversy Exception applied. *Id.* The Ninth Circuit reversed, finding that the fact "[t]hat a purchaser may have a residential address in California does not mean that [that] person is a citizen of California." *Id.* Further, the Ninth Circuit recognized that the proposed class definitions "reache[d] back" to cover class members whose claims arose years before the litigation began. *Id.* It followed that some putative class members who were California citizens when their claims accrued may have lost California citizenship by the time the case was removed. *Id.*; *see also* 28 U.S.C. § 1447(c). For this reason, too, the Ninth Circuit found that the district court erred when it inferred from the class definitions that "the group of [California] citizens outnumber[ed] the group of non-citizens by more than two to one." *Id.*

The same problems arise here, regardless of which version of the complaint the Court looks to. In the first amended complaint, which was the operative complaint at the time of removal, Plaintiffs defined the classes, in relevant part, as follows:

> **Resident Class:** All current residents of the Contamination Zone . . . .

> **Homeowner and Renter Subclass:** All current renters and owners of residential real property located in the Contamination Zone . . . .

Dkt. No. 1-2 at 36. The Second Amended Complaint includes the definitions below:

> **Resident Class:** All persons who have resided in the Contamination Zone . . . in the past four years.

1

2

> **<u>Homeowner and Renter Class</u>:** All persons who have rented or owned real property located in the Contamination Zone . . . in the past four years.

3  Dkt. No. 43 at 42.

4      Plaintiffs produce no other evidence of the putative class members'

5  citizenship and rely exclusively on the proposed class definition to satisfy the two-

6  thirds requirement of the Local Controversy Exception. This was precisely the error

7  made in *Mondragon. See Adams,* 958 F.3d 1222 ("In *Mondragon,* we vacated the

8  district court's remand order where the plaintiff failed to produce *any* evidence of

9  putative class members' citizenship and relied solely on his proposed class

10  definitions." (emphasis in original)). As in *Mondragon,* the proposed class

11  definitions here are broad enough to encompass: (1) people who own or rent

12  property in Washington but who aren't Washington citizens; and (2) people who

13  were previously Washington citizens but lost that status before removal. Thus,

14  without anything more, the Court cannot infer from the proposed class definitions

15  alone that more than two-thirds of the putative class members are Washington

16  citizens. Indeed, *no* evidence establishes the class members' citizenship at this

17  point. *See generally* Dkt.

18      As Plaintiffs fail to meet the first prong of the Local Controversy Exception

19  (and fail to argue the Home State Exception at all), the Court will continue to

20  exercise CAFA jurisdiction. Because the Court finds that it has subject-matter

21  jurisdiction under CAFA, it need not address other alleged bases for jurisdiction.

22  *See* Dkt. Nos. 1, 70.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 3.2    Airline Defendants' Motion for Judicial Notice.

The Court considers the Airline Defendants' request for judicial notice under Federal Rule of Evidence 201, which asks the Court to take judicial notice of the Federal Aviation Administration (FAA) and Environmental Protection Agency (EPA) administrative orders cited in their briefing. Because Plaintiffs do not oppose the request and because the Ninth Circuit has found that courts may take judicial notice of "records and reports of administrative bodies" on motions to dismiss without converting them into motions for summary judgment, the Court GRANTS the Airline Defendants' request. *Mack v. S. Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 986) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)); *see also* Fed. R. Evid. 201.

### 3.3    Motions to dismiss for lack of subject-matter jurisdiction.

The Court turns to Defendants' subject-matter jurisdiction challenges. Even as Defendants maintain that this Court has subject-matter jurisdiction for purposes of removal, they argue the Court must dismiss this case with prejudice under Rule 12(b)(1) for lack of subject-matter jurisdiction. The Court denies the motions for the reasons below.

#### 3.3.1    Rule 12(b)(1) standard.

Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Lack of subject-matter jurisdiction over a plaintiff's claims is grounds for dismissal or remand under Rule 12(b)(1). Fed. R.

Civ. P. 12(b)(1); *see Zunum Aero, Inc. v. Boeing Co.*, Case No. C21-0896-JLR, 2022 WL 17455782, at *2 (W.D. Wash. Dec. 6, 2022) (citing *Leite*, 749 F.3d at 1122 (finding motion to remand for lack of subject-matter jurisdiction "is the functional equivalent of a motion to dismiss . . . under Rule 12(b)(1)). Courts should grant Rule 12(b)(1) motions to dismiss "only 'if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.'" *S.M.F. v. United States*, Case No. 2:22-cv-01193-RAJ, 2023 WL 6215319, at *3 (W.D. Wash. Sept. 25, 2023) (quoting *Peña Arita v. United States*, 470 F. Supp. 3d 663, 679 (S.D. Tex. June 30, 2020)); *see also iSpot.tv, Inc., v. Teyfukova*, Case No. 2:21-cv-06815-MEMF(MARx), 2023 WL 1967958, at *4 (C.D. Cal. Jan. 25, 2023) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012)).

A jurisdictional challenge under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Jurisdictional challenges are "factual attacks" when they "rel[y] on extrinsic evidence and d[o] not assert lack of subject matter jurisdiction solely on the basis of the pleadings." *Id.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003)).

Defendants do not dispute "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *See id.* Put another way, Defendants' jurisdictional argument does not attack the veracity of Plaintiffs' allegations or

1    require Plaintiffs to prove up their allegations. And while Defendants cite to

2    administrative orders outside the pleadings, the Court has taken judicial notice of

3    those orders and may thus consider them without affecting the applicable, Rule

4    12(b)(6) legal standard. *See id.*; *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d at

5    1282. The Court also understands from the briefing that Defendants do not intend

6    to pursue a factual challenge or otherwise convert their motions to dismiss into

7    motions for summary judgment. *See* Dkt. No. 49 at 3 n.2 (citing *Ryan v. Lopez*, 2014

8    WL 2201076 at *2 (D. Or. May 23, 2014) and other cases for the proposition that

9    courts may take judicial notice of public records "without converting a motion to

10   dismiss into a motion for summary judgment").

11         For these reasons, the Court finds that the motions present facial attacks

12   rather than factual ones. "The district court resolves a facial attack as it would a

13   motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true

14   and drawing all reasonable inferences in the plaintiff's favor, the court determines

15   whether the allegations are sufficient as a legal matter to invoke the court's

16   jurisdiction." *Leite*, 749 F.3d at 1121.).

17         Notably, the Court has already found that it has subject-matter jurisdiction

18   under CAFA. So the Court considers next whether the law cited by Defendants

19   deprives the Court of subject-matter jurisdiction nevertheless.

20         **3.3.2    Airline Defendants' challenge to subject-matter jurisdiction
                under the "collateral attack" rule.**

21

22   The Airline Defendants argue that the collateral attack rule divests this

23   Court of subject-matter jurisdiction. Under the collateral attack rule, "[w]here

1    Congress has provided in the courts of appeals an exclusive forum for the correction

2    of procedural and substantive administrative errors, a plaintiff may not bypass that

3    forum by suing for damages in district court." *Mace v. Skinner*, 34 F.3d 854, 858

4    (9th Cir. 1994) (quoting *Green v. Brantley*, 981 F.2d 514, 520–21 (11th Cir. 1993)).

5    The rule is jurisdictional—it takes subject-matter jurisdiction away from district

6    courts when a federal statute confers exclusive subject-matter jurisdiction on the

7    federal courts of appeals. *See id*. The Airline Defendants maintain that 49 U.S.C.

8    § 46110 (Section 46110 of the FAA) is one such statute. Dkt. No. 49 at 18. Similarly,

9    the Airline Defendants argue that 42 U.S.C. § 7607(b)(1) (Section 7607 of the EPA)

10   precludes the Court's subject-matter jurisdiction because it requires that certain

11   challenges to EPA aircraft emissions standards be filed in the D.C. Circuit. *Id*. at

12   18–19.

13       Beginning with Section 46110 of the FAA, "the Ninth Circuit has . . . held

14   that '[t]he district court's federal question jurisdiction is *preempted* by [Section

15   46110] as to those classes of claims reviewable under [Section 46110].'" *Mace*, 34

16   F.3d at 858 (quoting *Clark v. Busey*, 959 F.2d 808, 811 (9th Cir. 1992)). That is,

17   district court jurisdiction is barred only as to "those classes of claims reviewable"

18   under Section 46110. *See id*.; 49 U.S.C. §46110(c).[2] But the Ninth Circuit has also

19   clarified that Section 46110 does not give federal appellate courts "direct and

---

[2] Reviewable orders are those issued by the Secretary of Transportation (or certain, listed administrators) "in whole or in part under this part, part B, or subsection (l) or (r) of section 114." 49 U.S.C. § 46110(a). The statute affords the right to seek review only to individuals who "disclos[e] a substantial interest" in a reviewable order. *Id*.

exclusive jurisdiction over *every possible dispute* involving the FAA." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 735 (9th Cir. 2006) (emphasis added) ("Section 46110 does not bar all manner of review of FAA orders by the district court."). The Airline Defendants cite several FAA regulations to support their collateral attack argument, but Section 46110 only discusses the review of agency orders.[3] *See id*. Similarly, Section 46110 only gives the court of appeals exclusive jurisdiction to "affirm, amend, modify, or set aside any part of the [administrative] order and [the power to] order the . . . [FAA] administrator to conduct further hearings." 49 U.S.C. § 46110(c). Thus, "[i]n principle, a district court may decide a claim for damages because § 46110 does not grant the court of appeals jurisdiction over this form of relief." *Americopters,* 441 F.3d at 736.

"In practice," however, the Ninth Circuit has "developed a body of case law that limits the jurisdiction of the district court, barring it from hearing a damages claim that is 'inescapably intertwined with a review of the procedures and merits surrounding the FAA's order.'" *Id*. (quoting *Crist v. Leippe*, 138 F.3d 801, 803 (9th Cir. 1988) (internal quotation marks and citations omitted)). The Ninth Circuit reiterated that the collateral attack rule "allows courts to identify and dismiss damages claims that are actually 'thinly disguised attempt[s] at an end-run around the jurisdictional limitation[s]" imposed by federal statutes. *Americopters, LLC*, 441 F.3d at 736 (quoting *Mace*, 34 F.3d at 860).

---

[3] An agency "order" is defined as "the whole or part of a final disposition . . . of an agency in a matter other than rulemaking." *Saliba v. SEC*, 47 F.4th 961, 968 (quoting *S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989) (quoting 5 U.S.C. § 551(6))).

Defendants' collateral-attack argument fails to explain how any of Plaintiffs' state-law damages claims are inextricably intertwined with a review of the procedures or merits surrounding a specific order reviewable under Section 46110. Plaintiffs do not expressly challenge or cite to any agency order, nor have they sued a federal agency or agency officials. Dkt. Nos. 1, 57 at 35–36. The Airline Defendants argue that Plaintiffs' claims against them inherently challenge the many FAA and EPA orders and regulations that apply to their heavily regulated conduct. *See* Dkt. No. 49 at 19–22. But this argument assumes that Defendants are complying with FAA and EPA regulations and orders, including EPA-approved emissions standards. It also presupposes that Plaintiffs' success on their claims would necessarily require the Airline Defendants to adopt different standards than those mandated by the FAA and EPA. At this point, however, these arguments are supposition at best—they are too broad and too vague for the Court to conclude that Plaintiffs' state-law claims are inescapably intertwined with the review of a particular agency order, or that their claims are actually "thinly disguised attempt[s] at an end-run around the jurisdictional limitation imposed by [§ 46110]." *Americopters, LLC*, 441 F.3d at 76 (quoting *Mace*, 3 F.3d at 860).

The Court likewise rejects the Airline Defendants' reliance on *Mckay v. City and Cnty. of San Francisco*, Case Nos. 16-cv-03561 NC, 16-cv-03564 NC, 2016 WL 7425927 (N.D. Cal. Dec. 23, 2016), as persuasive authority. There, the plaintiffs expressly asked the court to enjoin specific flight paths that the FAA had previously established via final agency decision. *Id*. at *4. In contrast, while the flight paths at Sea-Tac Airport are relevant to Plaintiffs' claims, Plaintiffs do not ask the Court to

alter or enjoin those flight paths, nor is it apparent from the complaint that Plaintiffs' claims—if successful—would require altering flight paths or any other administrative regulations or agency orders.

Next, the Court notes that the collateral attack doctrine—consistent with its name—typically comes up in cases where a person has been negatively impacted by a final agency order or decision, then collaterally attacks the order by suing the issuing agency in federal court. *See e.g.*, *Crist*, 138 F.3d 801 (pilot sued Secretary of Transportation and other transportation officials for suspending his commercial pilot certificate); *Mace*, 34 F.3d 854 (aircraft mechanic sued various agency officials for FAA's emergency revocation of his A&P license); *Krauss v. FAA*, Case No. 15-cv-05365-HRL, 2016 WL 1162028 (N.D. Cal. March 24, 2016) (plaintiffs sued FAA over agency changes to flight paths). Even though they are private parties, the Airline Defendants maintain that the collateral attack doctrine applies here because Plaintiffs attempt to hold them liable for simply complying with FAA and EPA orders. Dkt. No. 49 at 20–21 (citing *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958) (holding "all objections to the [administrative] order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all")). But ultimately, the Court cannot decide whether the Airline Defendants have complied with FAA and EPA orders on this record. That would require the Court to make factual determinations, which are forbidden under a Rule 12(b)(1) facial challenge.

Accordingly, the Court denies the Airline Defendants' motion to dismiss under Rule 12(b)(1).

1

### 3.3.3    The Port's challenge to subject-matter jurisdiction on Plaintiffs' inverse condemnation claim.

2

3    The Port insists that Plaintiffs' allegations are not enough to demonstrate

4    federal jurisdiction over Plaintiffs' inverse condemnation claim. Specifically, the

5    Port argues that the "subsequent purchaser rule"—a Washington standing

6    doctrine—deprives Plaintiffs of standing on their inverse condemnation claim,

7    thereby depriving this Court of subject-matter jurisdiction. Dkt. No. 50 at 29. On

8    this point, the Washington State Supreme Court recently confirmed that the

9    subsequent purchaser rule is a standing doctrine only—not a claim or defense.

10   *Maslonka v. Pub. Util. Dist. No. 1 of Pend Oreille Cty.*, 533 P.3d 400, 410 (Wash.

11   2023) (en banc) ("We hold that the subsequent purchaser rule is a doctrine of

12   standing . . . .").

13   "[S]tanding in federal court is a question of federal law, not state law."

14   *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013); *cf. Polo*, 833 F.3d at 1196 ("State

15   courts are not bound by the constraints of Article III."). While state law typically

16   provides the rules of decision in federal diversity cases, state law "does not control

17   the resolution of issues governed by federal statute," or by the Constitution or

18   treaties of the United States. *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196,

19   198 (1988) (citing U.S. Const., art. VI, cl. 2 (Supremacy Clause) and *Erie R. Co. v.*

20   *Tompkins*, 304 U.S. 64, 67 (1938)); 28 U.S.C. § 1652. And Article III of the U.S.

21   Constitution, of course, governs standing in federal court. The Port's briefing

22

23

references Article III standing only once in passing but does not argue it. [4] *See* Dkt. No. 50 at 16, 29–31. Rather, the Port argues that Plaintiffs lack standing under Washington law. *See id.* at 29. Accordingly, the Court rejects the Port's standing argument and denies its motion to dismiss under Rule 12(b)(1), as Plaintiffs' Article III standing is obvious. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (to establish standing, a "plaintiff must plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.").

In any event, the Court finds that Washington's subsequent-purchaser rule is inapplicable here. That rule "prohibits landowners from suing for property damage caused by governmental conduct that occurred prior to their ownership." *Maslonka*, 533 P.3d at 406. The rule assumes that a governmental taking does not injure a subsequent purchaser of property because that purchaser "presumably" paid "a price that . . . reflect[ed] the diminished property value" caused by the "earlier taking." *Wolfe v. State Dep't of Transp.*, 293 P.3d 1244, 1247 (Wash. Ct. App. 2013); *see also Hoover v. Pierce Cty.*, 903 P.2d 464, 434 (Wash. Ct. App. 1995) ("[T]he court has found that no taking damages should be awarded to plaintiffs who acquired property for a price commensurate with its diminished value.").

---

[4] The Court notes that the Port's motion fails to address why it requests dismissal as opposed to remand. Generally, if the district court finds that the plaintiff lacks standing in a removed case, it "must [ ] remand[ ] [the case] to state court under § 1447(c)." *Polo*, 833 F.3d at 1197. This rule "applies as well to a case removed pursuant to CAFA as to any other type of removed case." *Id.*

ORDER ON MOTIONS TO DISMISS SECOND AMENDED COMPLAINT - 17

"Although purchasers may not recover for a *prior* taking, they may sue for any new takings that occur *after* acquiring the property." *Hoover*, 903 P.2d at 469 (emphasis added); *see also Maslonka*, 533 P.3d at 407 (explaining inverse condemnation claim exists where a new taking occurs after the property's purchase). The Washington State Supreme Court has found that a taking occurs when "quantitative and qualitative changes in operations at the [Sea-Tac] [A]irport" lead to increased air traffic that "result[s] in a measurable diminution of property value and/or a need to undertake modifications to protect against [the] interference." *Highline Sch. Dist. 401 v. Port of Seattle*, 548 P.2d 1085, 1091 (Wash. 1976) (en banc); *see also Hoover*, 903 P.2d at 469 (citing *Highline Sch. Dist.*, 548 P.2d at, 1090–91) and *Petersen v. Port of Seattle*, 618 P.2d 67, 71 (Wash. 1980) (en banc)).

Here, Plaintiffs allege that changes to Sea-Tac Airport, including increased air traffic, call for modifications to protect against the toxic pollution accumulating on their properties. *See e.g.*, Dkt. No. 43 at 42 (discussing mitigation and rehabilitation). From the complaint, it does not appear that Plaintiffs attempt to pursue legal claims that belong to previous landowners for a loss in property value that occurred prior to their ownership. Accordingly, even considering Washington's subsequent purchaser rule, the Port's standing argument fails.

### 3.4    Motions to dismiss for failure to state a claim.

#### 3.4.1    Legal standards.

##### 3.4.1.1    Rule 12(b)(6) standard.

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts that "plausibly give rise to an entitlement to relief." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). On a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support their claims." *McGary v. Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004) (quotation omitted). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* (quotation omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that complaints may proceed even "recovery is very remote"). On a Rule 12(b)(6) motion, courts may generally only consider the facts alleged in the complaint, taking the complaint's factual allegations as true and construing them "in the light most favorable to the nonmoving party." *Arias v. Raimondo*, 860 F.3d 1185, 1189 (9th Cir. 2017); Fed. R. Civ. P. 12(b)(6).

Defendants' Rule 12(b)(6) motions are based on their federal preemption affirmative defense. *See Zunum Aero, Inc. v. Boeing Co.*, Case No. C21-0896-JLR, 2024 WL 2325278, at *1 (W.D. Wash. May 21, 2024) (Robart, J.) ("Preemption is an

affirmative defense[.]") (quoting *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021)); *see also Bearse v. Port of Seattle*, Case No. C09-0957-RSL, 2009 WL 3066675, at *3 (W.D. Wash. Sept. 22, 2009) (Lasnik, J.) (finding that the Port's affirmative defense of preemption under the CAA "does not fall within an area that Congress has so completely preempeted as to create removal jurisdiction"). "Generally, a court will not dismiss a complaint for failure to state a claim under Rule 12(b)(6) when a defendant merely pleads affirmative defenses." *Dominguez v. FS1 L.A., LLC*, CV 15-09683-RSWL-AJWx, 2016 WL 2885861, at *8 (C.D. Cal. May 17, 2016). "This is because a plaintiff does not need to anticipate and plead around all potential defenses." *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Id.* (quoting *Xechem*, 372 F.3d at 901); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense.").

### 3.4.1.2    *The Supremacy Clause and federal preemption.*

Under the Constitution's Supremacy Clause, the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

1    notwithstanding." U.S. Const. art. VI, cl. 2; *Cipollone v. Liggett Grp.*, Inc., 505 U.S.

2    504, 516 (1992). Given this constitutional mandate, state laws that conflict with

3    federal laws are "without effect." *Cipollone*, 505 U.S. at 516 (quoting *Maryland v.*

4    *Louisiana*, 541 U.S. 725, 746 (1981)).

5        When considering preemption issues, courts "start[] with the assumption that

6    the historic police powers of the States [are] not to be superseded by . . . Federal Act

7    unless that [is] the clear and manifest purpose of Congress." *Id.* (quoting *Malone v.*

8    *White Motor Corp.*, 435 U.S. 497, 504 (1978) (internal quotation omitted)). Indeed,

9    the Supreme Court has held that Congress's intent is the "ultimate touchstone of

10   pre-emption analysis." *Id.* (internal quotation omitted) (cleaned up). And the Ninth

11   Circuit has prompted courts to remain "mindful of the adage that Congress does not

12   cavalierly preempt state law causes of action." *Nat'l Fed. of the Blind v. United*

13   *Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016) (quoting *Montalvo v. Spirit Airlines*,

14   508 F.3d 464, 471 (9th Cir. 2007)). Congress's intent may be "explicitly stated in the

15   statute's language or implicitly contained in its structure and purpose." *Cipollone*,

16   505 U.S. at 516 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). In

17   the field of aviation, both the Supreme Court and the Ninth Circuit have repeatedly

18   "recognized that that 'preemptive intent is more readily inferred' . . . because it is

19   'an area of the law where the federal interest is dominant.'" *Nat'l Fed. of the Blind*,

20   813 F.3d at 724 (quoting *Montalvo*, 508 F.3d at 471).

21       "Federal law may preempt state law in three ways." *Id.* at 724. These are:

22   (1) express preemption, (2) field preemption, and (3) conflict preemption. *Id.*

23   Express preemption occurs when Congress includes a preemption provision in a

federal law. *Id*. Under the field preemption doctrine, "[s]tates are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id*. (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Finally, conflict preemption occurs when simultaneous compliance with a federal law and state law is impossible, or when "the challenged state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Id*. (internal quotation omitted). "Regardless of the type of preemption involved—express, field, or conflict—[t]he purpose of Congress" remains the "ultimate touchstone" in the analysis. *Id*.

Defendants argue that express, field, and conflict preemption preclude Plaintiffs' claims. The Court addresses and rejects these arguments below.

### 3.4.2    Express preemption under the Airline Deregulation Act (ADA).

The Defendants all argue that the ADA expressly preempts Plaintiffs' claims, citing to the ADA provision governing "[p]reemption of authority of prices, routes, and services." 49 U.S.C. § 41713(b)(1). That provision states:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

*Id*. When analyzing ADA preemption, the Ninth Circuit presumes "that the historic police powers of the States [are] not to be superseded by the [ADA] unless that was the clear and manifest purpose of Congress' and that 'Congress does not cavalierly

1    pre-empt state-law causes of action.'" *ATA v. San Francisco*, 266 F.3d 1064, 1070

2    (9th Cir. 2001) (quoting *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265

3    (9th Cir. 1998) (en banc) (internal quotation marks omitted)).

4         Congress enacted the ADA "to promote maximum reliance on competitive

5    market forces." *Id.* (cleaned up) (internal quotation omitted). "Nothing in the Act

6    itself, or its legislative history, indicates that Congress had a 'clear and manifest

7    purpose' to displace state [laws] in actions that do not affect deregulation in more

8    than a 'peripheral manner.'" *Id.* (quoting *Charas*, 160 F.3d at 1635) (citing *Morales

9    v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992))). "[A] local law will have a

10   prohibited connection with a price, route or service" and thus be preempted by the

11   ADA "if the law binds the air carrier to a particular price, route, or service and

12   thereby interferes with competitive market forces within the air carrier industry."

13   *Id.* at 1072; *see also Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014)

14   (same). "[T]he terms 'price,' 'route' and 'service' were used by Congress in the public

15   utility sense; that is, 'service . . . refers to such things as the frequency and

16   scheduling of transportation, and to the selection of markets to or from which

17   transportation is provided.'" *Air Transp. Ass'n of Am. v. San Francisco*, 266 F.3d

18   1064, 1071 (9th Cir. 2001) (quoting *Charas*, 160 F.3d at 1265–66).

19        The Airline Defendants argue that the ADA preempts Plaintiffs' claims

20   because Plaintiffs' "allegations make clear that [their] theory of liability hinges on

21   the Airlines' 'course of travel' and 'provision of air transportation to and from [Sea-

22   Tac Airport] at various times'—*i.e.*, their routes and services." Dkt. No. 49 at 26.

23   Similarly, the Port maintains that "[i]n effect, Plaintiffs' claims against the Port

1    seek to curtail takeoffs and landings from [Sea-Tac Airport] and to generally reduce

2    the amount of flight activity at the Airport." Dkt. No. 50 at 28. Further, the Port

3    asserts that Plaintiffs' claims "necessarily 'relate to' airline 'routes, and services[.]"

4    *Id.* (quoting *Nw. Inc. v. Ginsberg,* 572 U.S. 273 (2014)).

5        Because Plaintiffs' claims assert that the chemicals released from

6    Defendants' planes have harmed them, factual allegations about flight frequency

7    and Plaintiffs' proximity to the airport are certainly relevant. But from the present

8    record, it does not necessarily follow that Plaintiffs' claims "hinge[]" on preempted

9    issues as Defendants' suggest, nor is it self-evident from Plaintiffs' claims that

10   airlines would be impermissibly bound "to a particular price, route, or service" if

11   Plaintiffs succeed. *See ATA v. San Francisco*, 266 F.3d at 1072.

12       In short, Defendants' ADA preemption argument is premature and requires

13   factual findings. Given the Rule 12(b)(6) standard and the Court's duty to "start

14   with the assumption that the historic police powers of the States [are] not to be

15   superseded by the [ADA] unless that was the clear and manifest purpose of

16   Congress," the Court rejects Defendants' ADA preemption argument at this early

17   stage. *Id.* at 1070; *see also Sams*, 713 F.3d at 1179 (courts should not grant Rule

18   12(b)(6) motions to dismiss based on an affirmative defense unless the complaint's

19   allegations establish that defense).

20       **3.4.3    Express preemption under the Clean Air Act (CAA).**

21       Defendants also argue that Section 233 of the CAA (42 U.S.C. § 7573)

22   expressly preempts Plaintiffs' claims. That statute provides:

23

> No State or political subdivision thereof may adopt or attempt to enforce any standard respecting emissions of any air pollutant from any aircraft or engine thereof unless such standard is identical to a standard applicable to such aircraft under this part.

42 U.S.C. § 7573.

Precedent on Section 233 is sparse. But the Ninth Circuit has clarified the scope of Section 233 preemption, holding that Congress did not intend Section 233 to "be preclusive of all state regulation" regarding emissions from aircraft or aircraft engines. *California v. Navy*, 624 F.2d 885, 888 (9th Cir. 1980). Rather, Section 233 "is concerned with the direct state regulation of aircraft or aircraft engines or with other state regulation which would affect the aircraft or engine." *Id.*

In *California v. Navy*—a case about aircraft engine pollution—the Ninth Circuit adopted a test for Section 233 preemption. 624 F.2d at 888. In that case, the State of California tried to apply its pollution regulations to the Navy's aircraft engine testing, which happened in the Navy's "test cells" on the ground. *Id.* at 886. The Navy argued that California could not regulate this pollution because Section 233 of the CAA preempts regulation of air pollutants from aircraft and aircraft engines. *See id.* at 887. The Ninth Circuit rejected the Navy's argument and held that state pollution regulations may apply to aircraft engine emissions in certain circumstances consistent with Section 233's preemption clause. Specifically, it concluded:

> [W]e hold that emissions from aircraft engine test cells are subject to state pollution regulations if those regulations can be met without affecting the engine. If the state regulations cannot be met without effect upon the engine, then they become a regulation of the engine itself and

are preempted under [Section] 233. The test developed by the district court and adopted here will call for case-by-case determinations, depending on the pollution standard set by the particular state regulation involved and on the then-existing feasible technical means of controlling emissions without an effect on the engine. Such a case-by-case approach is an appropriate means to accommodate the dual congressional purposes of allowing broad state sovereignty in air pollution regulation and of protecting certain paramount federal aviation interests.

*Id*. at 889.

Like *California v. Navy*, if Plaintiffs' claims necessitate aircraft alterations as a factual matter, then they may be preempted. *See id*. But as the Ninth Circuit reasoned, there may be ways of controlling emissions without violating Section 233. *Id*. Additionally, Section 233 allows states to enforce standards that are "identical" to the EPA's aircraft emission standards. 42 U.S.C. § 7573. While the Airline Defendants insist that they are complying with these standards, the Court cannot make that factual finding in Defendants' favor on Defendants' 12(b)(6) motion to dismiss. At bottom, given the applicable legal standard and the Ninth Circuit's "case-by-case" preemption test designed specifically for Section 233, the Court rejects Defendants' Section 233 preemption argument at this stage.

### 3.4.4    Field preemption under the Federal Aviation Act (FAA) and the CAA.

Defendants maintain that Plaintiffs' Washington common law claims are subject to field preemption. *See* Dkt. No. 49 at 31; Dkt. No. 50 at 24. Field preemption is implied preemption; it occurs when Congress "intend[s] to exclude all state law" in a given field, "even though it didn't say so." *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009). Under this doctrine,

"State law is pre-empted . . . if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Nat'l Fed. of the Blind*, 813 F.3d at 733 (quoting *Cipollone*, 505 U.S. at 516 (internal citation omitted)).

Field preemption has been addressed many times in the FAA context, where the Ninth Circuit has found that FAA field preemption exists but is "is far from all-encompassing." *Brown v. Alaska Air Grp. Inc.*, No. CV–11–0091–WFN, 2011 WL 2746251, at *4 (E.D. Wash. July 14, 2011) (Nielson, J.) (citing *Martin ex rel. Heckman*, 555 F.3d at 809 (holding that the "FAA did not displace all state tort law touching air travel, n[or] did it leave states free to impose tort liability on all aspects of airplane operations")). The Ninth Circuit has held that airline regulatory acts "evidence [] congressional intent to prohibit state laws from regulating the airlines while preserving state tort remedies that already existed at common law." *Martin ex rel. Heckman*, 555 F.3d at 808–09 (quoting *Charas*, 160 F.3d at 1265 (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 234 & n.9 (1995) (suggesting airline regulatory statutes "leave[] room for personal injury claims."))).

To decide whether FAA field preemption applies, circuit courts "generally . . . look to the pervasiveness of federal regulations in *the specific area* covered by the tort claim or state law at issue." *Id.* at 808–09 (emphasis added). Thus, the specific nature of the tort claim matters—even in a field-preemption analysis. *See id.*; *see also Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 368 (3d Cir. 1999) ("although the term 'field preemption' suggests a broad scope, the scope of a field deemed preempted by federal law may be narrowly defined"); *Nat'l Fed. of the Blind*, 813

1    F.3d at 733–34 (discussing the "field" of "kiosk accessibility"). Indeed, the Ninth

2    Circuit has "emphasized the importance of delineating the pertinent area of

3    regulation with specificity before proceeding with the field preemption inquiry."

4    *Nat'l Fed. of the Blind*, 813 F.3d at 734.

5            The Airline Defendants argue that "there is no question that the FAA

6    occupies the field for flight operations at issue here—involving airspace

7    management and flight paths, aviation safety, aircraft engine and body design, and

8    emissions." Dkt. No. 49 at 33. But to say that the FAA preempts Plaintiffs' claims

9    because they "involve" broad categories of federally regulated activity is insufficient.

10   *See Martin ex rel. Heckman*, 555 F.3d at 808–09. Here, because Plaintiffs allege that

11   they were harmed by pollution from airplanes, the Court considers the pertinent

12   field to be airplane pollution and its effects on people and property.

13           As to the applicable field of airplane pollution, Defendants maintain that the

14   CAA occupies the field such that Plaintiffs' claims are preempted. *See* Dkt. No. 49 at

15   34. As discussed above, however, the Ninth Circuit has held that the CAA does not

16   completely preempt state pollution regulations. *California v. Navy*, 624 F.2d at 889.

17   Whether the CAA preempts a particular state regulation will depend on the

18   particular facts of a given case and thus requires a case-by-case, factual analysis.

19   *Id.* (The [preemption] test . . . adopted here will call for case-by-case determinations,

20   depending on the pollution standard set by the particular state regulation involved

21   and on the then-existing feasible technical means of controlling emissions . . ."). It

22   follows, then, that the CAA does not occupy the field of airplane pollution.

23

1

2

Defendants rely on *Washington v. General Motors Corp.* 406 U.S. 109, 115 (1972), where the Supreme Court plainly stated that Congress has "pre-empted the field so far as emissions from airplanes are concerned." 406 U.S. 109, 115 (1972). But as the Second Circuit and Northern District of California have recognized, the Supreme Court's statements on preemption in *Washington* are dicta. *See In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Prods. Liability Litig.*, 295 F. Supp. 3d 927, 1002 (N.D. Cal. 2018) (citing *Exxon Corp. v. City of New York*, 548 F.2d 1088, 1095 n.12 (2d Cir. 1977)). As the Northern District of California put it:

> In *Washington*, multiple states asked for leave to file a bill of complaint with the Supreme Court based on allegations that the country's four major car manufacturers and their trade association had conspired to restrain the development of motor vehicle air pollution control equipment. The Supreme Court agreed that it had jurisdiction over the controversy but nevertheless denied leave to file the bill of complaint because of "the availability of the federal district court as an alternative forum and the nature of the relief requested," i.e., "corrective remedies...must be considered in the context of localized situations." [*Washington*, 406 U.S. at 114]. The Supreme Court was never called upon to make and never made a preemption ruling[.]

*Id.* at 1002. This Court agrees with that analysis.

Accordingly, the Court rejects Defendants' field preemption argument.

### 3.4.5   Conflict Preemption under the FAA and CAA.

Conflict preemption is another form of implied preemption. *Jones v. Google LLC*, 73 F.4th 636, 644 (9th Cir. 2023). "Conflict preemption has two forms: impossibility and obstacle preemption." *Deanco Healthcare, LLC v. Becerra*, 365 F. Supp. 3d 1029, 1038 (C.D. Cal. 2019) (citing *Crosby v. Nat'l Foreign Trade Council*,

530 U.S. 363, 372 (2000)). "Impossibility preemption occurs where 'it is impossible for a private party to comply with both state and federal law.'" *Id.* at 1037–38 (quoting *Crosby*, 530 U.S. at 372). "Obstacle preemption occurs 'where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 1038 (quoting *Crosby,* 530 U.S. at 373 (internal quotation marks and alterations omitted)). "[S]tate law cannot by its mere existence stand as such an obstacle when the federal government contemplates coexistence between federal and local regulatory schemes." *Skysign Intern., Inc. v. Honolulu*, 276 F.3d 1109, 1117 (2002).

Given the reasoning above and the Ninth Circuit's decision in *California v. Navy*, 624 F.2d 885 (9th Cir. 1980), Rule 12(b)(6) dismissal based on Defendants' affirmative defense of conflict preemption is inappropriate. In short, Plaintiffs have not plead themselves out of court, *see Dominguez v. FS1 L.A.,* 2016 WL 2885861, at *8, and whether conflict preemption applies depends on the particular facts of this case, *California v. Navy*, 624 F.2d at 889.

## 4.  CONCLUSION

In sum, the Court DENIES Defendants' Motions to Dismiss, Dkt. Nos. 49, 50.


Dated this 25th day of November, 2024.


Jamal N. Whitehead
United States District Judge